J-A14043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ASHLEY PEDRICK, | |
| Appellant | No. 1574 EDA 2016 |

Appeal from the Judgment of Sentence April 14, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-MD-0000122-2016

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 30, 2017**

Appellant, Ashley Pedrick, appeals from the judgment of sentence imposed after she was held in criminal contempt of court.[1]  We affirm Appellant's judgment of sentence, but remand for the correction of a clerical error in the record.

The trial court summarized the factual and procedural history of this case as follows:

> [Appellant] and her co-defendant were charged with robbery and related offenses.[1]  Her case was held for court on December 4, 2015, with a next scheduled court date of January 27, 2016.  [Appellant] failed to appear on that date.  Her attorney stated that [Appellant] was possibly injured by a gunshot wound and requested a continuance for further investigation.  A judge–only bench warrant was issued by the

---

[1] 42 Pa.C.S. § 4132(3).

Honorable Robert P. Coleman and that next court date was listed for February 24, 2016. [Appellant] failed to appear and Judge Coleman issued another judge-only bench warrant.

[1] This robbery case was docketed as CP-51-CR-0012246 -20[1]5.

On March, 9, 2016, [Appellant] appeared before this [c]ourt for a contempt hearing. This [c]ourt reviewed her history of failing to appear at prior court dates. Defense counsel Sonya Gross, Esquire stated that she had told the [c]ourt about [Appellant's] possible gunshot wound on January 27 because that was the rumor she heard from other people; however, it was later found to be untrue. Ms. Gross further stated that she failed to send [Appellant] notice of her next court date on February 24, 2015 and took full responsibility for her failure to appear. Ms. Gross stated that [Appellant] told her that [Appellant] failed to appear on January 27 because she had an abscess and was receiving medical treatment. [Appellant] told Ms. Gross that she lost her receipt from that doctor's appointment. Ms. Gross further stated that [Appellant] told her that she tried to call the courtroom that day but did not have the phone number, and was given the incorrect phone number when she called police headquarters. Ms. Gross stated that [Appellant] told her that she was unable to use public transportation to travel to the courthouse after her treatment because she didn't have any money.

Jessica Chung, Esquire, on behalf of the Commonwealth, stated that [Appellant] also failed to appear for a court date in 2014. She asked that this Court raise bail in this matter to $100,000.

* * *

This [c]ourt found that [Appellant] willfully failed to appear and found her in contempt. Ms. Gross stated that she did not know this was a contempt hearing and objected to the admission of prior bench warrant history. This [c]ourt replied that the prior bench warrant history was not taken into consideration; rather, this [c]ourt explained that [Appellant] did not have a legitimate, credible excuse for failing to appear.

* * *

This [c]ourt found [Appellant] in contempt and sentenced her to 2 months and 28 days to 5 months and 29 days of county incarceration, with credit for time served if applicable. Ms. Gross rejected the Commonwealth's offer and requested a date for trial.

On March 18, 2016, defense counsel filed a motion in arrest of judgment, arguing that neither she nor the Commonwealth had argued "as to the culpability for the criminal offense of contempt" and that neither she nor the Commonwealth were on notice that a contempt hearing would be held that date. Defense counsel further argued that "poverty and an inability to pay carfare were not "willful" acts.

On April 6, 2016, defense counsel appeared before this [c]ourt without [Appellant] and asked this [c]ourt to grant her motion in arrest of judgment based upon an alleged lack of notice to counsel regarding the contempt hearing as well as this [c]ourt's finding of contempt based upon [Appellant's] lack of transportation funds. Defense counsel asked that this [c]ourt vacate the sentence. This [c]ourt stated that counsel had notice that there would be a "Judge-Only Bench Warrant" hearing, as the court file was clearly marked and there was no other issue except contempt if this [c]ourt found that [Appellant] willfully failed to appear. This [c]ourt further stated that it did not find [Appellant's] testimony stating various reasons for failing to appear to be credible.

On April 8, 2016, this [c]ourt signed an order, in an abundance of caution, vacating the sentence imposed on March 9, 2016 to allow for consideration of the motion in arrest of judgment and the hearing on contempt. On the record, this [c]ourt stated that while she had initially stated that this motion would be denied by operation of law, she had reconsidered and would allow a hearing on the matter with [Appellant] present so that the record was clear and counsel could make argument on the contempt offense.

On April 14, 2016, this [c]ourt conducted the hearing referenced in the April 8, 2016 order. Defense counsel put forth a motion for recusal, arguing that this [c]ourt was no longer neutral and requested a new judge to hear the matter. This

motion was denied. Defense counsel then stated that she did not have any new testimony or evidence to present regarding whether [Appellant] was in contempt when she failed to appear on January 27, 2016. She reiterated that [Appellant] had been in the hospital that day, checked herself out against medical advice, did not have the correct telephone number for the courtroom, and did not have funds to pay for transportation to the courthouse. Defense counsel argued that lack of funds was not a "willful" failure to appear. This [c]ourt asked defense counsel whether she had any documentation showing that [Appellant] had been hospitalized that day and she did not. Based upon this argument and lack of new evidence, this [c]ourt found [Appellant] in contempt for failing to appear that day. . . . The Commonwealth recommended the same sentence [Appellant] received the first time: 2 months and 28 days to 5 months and 29 days county incarceration. This [c]ourt agreed with the Commonwealth and imposed the same sentence. Last, this [c]ourt denied defense counsel's oral motion to set bail.

On May 13, 2016, [Appellant] filed a Notice of Appeal to Superior Court. On May 20, 2016, [Appellant's] robbery charge was dismissed because the Commonwealth was not ready to proceed on that date. On July 13, 2016, upon receipt of all notes of testimony, this [c]ourt ordered defense counsel to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and defense counsel did so on July 21, 2016.

Trial Court Opinion, 10/25/16, at 2-5.

Appellant presents the following issues for our review:

1. Where the only evidence at trial is that an individual did not appear for a scheduled court appearance, whether that is sufficient under Pennsylvania law and the Due Process Clause to establish the element of a wrongful, willful intent that is necessary for a conviction for criminal contempt?

2. Where a judge has made an adverse credibility determination against [Appellant] and convicted and sentenced her for non-summary criminal contempt, is it not an abuse of discretion and a violation of Due Process rights to refuse recusal at a new trial after the first adjudication was vacated?

Appellant's Brief at 7.

We first note that Appellant's sentence entered April 14, 2016, indicates that she was convicted of contempt under 42 Pa.C.S. § 4137(a)(2). Order of Sentence Contempt of Court, 4/14/16, at 1. The order, however, sentenced Appellant to a minimum of two months, twenty-eight days, to a maximum of five months, twenty-nine days in county prison. *Id.*

Section 4137 provides, in relevant part, as follows:

**§ 4137. Contempt powers of magisterial district judges**

**(a) General rule.--**A magisterial district judge shall have the power to issue attachments and impose summary punishments for criminal contempts of a magisterial district judge court in the following cases:

* * *

(2) Failure of a person to obey lawful process in the nature of a subpoena issued by a magisterial district judge.

* * *

**(c) Punishment.--**Punishment for contempt specified in subsection (a)(1) or (3) may be a fine of not more than $100 or imprisonment for not more than 30 days, or both. Punishment for contempt specified in subsection (a)(2) shall be a fine of not more than $100. Failure to pay within a reasonable time could result in imprisonment for not more than ten days. Punishment for contempt specified in subsection (a)(5) shall be in accordance with that specified in 23 Pa.C.S. § 6114(b) (relating to contempt for violation of order or agreement). Punishment for contempt in subsection (a)(4) would be imprisonment for not more than 90 days.

42 Pa.C.S. § 4137.

Thus, Section 4137 applies to magisterial district judges. Additionally, a finding of contempt under Section 4137(a)(2) allows for a maximum fine of $100. 42 Pa.C.S. §§ 4137(a)(2), (c). Accordingly, the imposition of contempt under this provision is inappropriate. Indeed, in its Pa.R.A.P. 1925(a) opinion the trial court properly stated that 42 Pa.C.S. § 4137 is inapplicable to the case at bar. Trial Court Opinion, 10/25/16, at 11-12. As the trial court explained: "This statute is inapplicable. This [c]ourt is not a magisterial district court; it is the Court of Common Pleas." *Id.* at 12. Without acknowledging the reference to Section 4137 in its April 14, 2016 order, the trial court identifies 42 Pa.C.S. § 4132(3), quoting "the power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases: . . . the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." *Id.* at 12.

Section 4132 provides, in relevant part, as follows:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S. § 4132.

After considering the plain terms of the relevant statutes, it is evident that the trial court found Appellant in contempt of court under 42 Pa.C.S. § 4132(3). Trial Court Opinion, 10/25/16, at 12. The trial court demonstrated its understanding of the distinction between the two statutes as reflected in its explanation of the inapplicability of Section 4137 in its opinion. It appears that after the trial judge found Appellant guilty of criminal contempt and sentenced Appellant in open court to a term of two months and twenty-eight days to five months and twenty-nine days in the county jail, N.T., 4/14/16, at 25, the trial judge mistakenly signed a sentencing order, which declared that Appellant had been found in contempt under 42 Pa.C.S. § 4137(a)(2). As such, the reference to Section 4137 in the April 14, 2016 order constitutes a mere clerical error.

"A trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." **Commonwealth v. Thompson**, 106 A.3d 742, 766 (Pa. Super. 2014) (internal corrections omitted) (quoting **Commonwealth v. Borrin**, 12 A.3d 466, 471 (Pa. Super. 2011) (*en banc*)). "This authority exists even after the 30–day time limitation for the modification of orders expires." **Thompson**, 106 A.3d at 766; 42 Pa.C.S. § 5505. As our Supreme Court explained:

> [The Pennsylvania Supreme Court has] set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not, describing correctible errors as those determined to be "patent and obvious mistakes." The term "clerical error" has been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair. *See, e.g., Commonwealth v. Silcox*, 29 A. 105, 106 (Pa.1894) (upholding the trial court's direction to correct a "clerical" omission and amend the record to state that the defendant was present at every stage of the proceedings); *Commonwealth v. Liscinsky*, 171 A.2d 560, 561 (Pa.Super.1961) (explaining that the sentencing order contained a "clerical" error subject to correction, as it did not reflect that the trial court specifically stated at sentencing that the sentence it imposed was effective on expiration of defendant's federal sentence); *Commonwealth v. Mount*, 93 A.2d 887, 888 (Pa.Super.1953) ("Clerical errors" or inaccuracies in docket entries [or orders] may be corrected by the trial court so that they conform to the facts.").

*Commonwealth v. Borrin*, 80 A.3d 1219, 1227–1228 (Pa. 2013) (some internal citations omitted). Thus, we remand the case so that the trial court may correct the clerical error in the record.

Turning to the merits of this appeal, Appellant first argues that there was insufficient evidence to convict her of criminal contempt. Appellant's Brief at 10. Appellant asserts that the Commonwealth did not present any evidence at the April 14, 2016 hearing. *Id.* at 10. Thus, Appellant contends, the trial court convicted Appellant of criminal contempt without any evidence of a critical element of the offense, specifically, wrongful, willful intent. *Id.* at 11. Appellant maintains that non-appearance at a scheduled court date does not establish the element of wrongful intent necessary to a conviction of criminal contempt. *Id.* at 12. Appellant further

asserts that the trial court's conviction of criminal contempt violates her due process rights because the Commonwealth did not prove every element of the offense beyond a reasonable doubt, and the burden was improperly shifted to her to prove her innocence. *Id.* at 11. According to Appellant, the conviction should be vacated and judgment should be arrested. *Id.* at 14.

Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943-944 (Pa. Super. 2011).

The power of the courts

> to impose summary punishments for contempts of court shall be restricted to ... cases ... where the misbehavior of any person in the presence of the court ... obstructs the administration of justice. To sustain a conviction for direct criminal contempt under [Section 4132(3)] there must be proof beyond reasonable

- 9 -

doubt (1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) that obstructs the administration of justice.

**Commonwealth v. Moody**, 125 A.3d 1, 5 n.4 (quoting **Williams v. Williams**, 721 A.2d 1072, 1073 (Pa. 1998)).

Our courts have interpreted the phrase "in the presence of the court" in a relatively expansive fashion, so that the phrase extends beyond "those acts that the judge sees with his or her own eyes." **Commonwealth v. Brown**, 622 A.2d 946, 948 (Pa. Super. 1993). As summarized by this Court:

> many prison sentences for direct contempt have been upheld although the act was not committed "in front of" the judge finding the contempt. **See Commonwealth v. Crawford**, 352 A.2d 52 (Pa.1976) (contemnor stated he would not testify though he did not actually refuse to answer questions in open court); **Commonwealth v. Shaw**, 421 A.2d 1081 (Pa.Super.1980) (defendant failed to return to court for afternoon session); **Rosenberg Appeal**, 142 A.2d 449 (Pa.Super.1958) (holding that, in proceedings before a grand jury, a witness' refusal to testify is considered as taking place in the presence of the court).

**Brown**, 622 A.2d at 948. Additionally, "[t]he minimum intent required to prove criminal contempt is 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" **Commonwealth v. Debose**, 833 A.2d 147, 149 (Pa. Super. 2003).

> With regard to the fourth element of contempt, it is well-established that for conduct to constitute an obstruction of the administration of justice, it must significantly disrupt the proceedings. Contempt requires "actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority."

*Commonwealth v. Odom*, 764 A.2d 53, 57 (Pa. Super. 2000) (internal citations omitted).

Here, the trial court provided the following explanation for determining there was sufficient evidence to support its determination that Appellant was in contempt:

> In the case at bar, the evidence was sufficient to support this [c]ourt's finding that [Appellant] was in contempt for failing to appear in court. The record shows that on January 27, 2016, this [c]ourt was convened and open for the transaction for business. [Appellant] was scheduled to appear that day and had proper notice of the proceedings. However, [Appellant] failed to appear; thereby obstructing the operations of this [c]ourt as it could not proceed with her matter that day. This [c]ourt issued a judge-only bench warrant. On March 9, 2016, when [Appellant] appeared for the judge-only bench warrant hearing, she stated that she failed to appear because she was in the hospital for an abscess, that she checked herself out against medical advice, that she didn't know the phone number to the courtroom, that she called police headquarters and that they gave her incorrect contact information for the courtroom, and that she didn't have any money for public transportation. This [c]ourt did not find [Appellant] to be credible. Rather, this [c]ourt found that [Appellant] willfully failed to appear. Later, after defense counsel filed and argued motions regarding lack of notice for the contempt hearing, this [c]ourt vacated the original sentence and conducted a second hearing so that defense counsel and [Appellant] could prepare additional arguments and provide documentation to support their claims. At the second hearing on April 14, 2016, defense counsel made the same arguments and did not provide any documentation, such as hospital discharge paperwork or a doctor's note, to support [Appellant's] story that she had been hospitalized that day for an abscess. Based upon this information, this [c]ourt once again found [Appellant] in contempt and imposed the same sentence of 2 months 28 days to 5 months 29 days county incarceration. This finding of contempt was based upon sufficient evidence; specifically, that [Appellant] knew she was supposed to appear in court, she failed to appear that day, she was of adult age and

had prior experience with the court system, and could not provide any reasonable legitimate excuse for her failure to appear.

[Appellant] further claims that this [c]ourt improperly "shifted the burden of proof" to her, arguing that this [c]ourt failed to presume [Appellant] innocent and put the burden on [Appellant] "to introduce evidence that would prove her innocence." This claim is without merit. [Appellant] was not required to prove her innocence; rather, [Appellant] was given the opportunity to prepare and present her defense. The record was clear that [Appellant] failed to appear at her January 27, 2016 court date, despite having received adequate notice. [Appellant] initially stated that she had been hospitalized, then she said she didn't have the phone number for the courtroom, then she said she received incorrect contact information from the police, then she said she didn't have money for transportation. This [c]ourt did not find her version of events to be credible. At the second hearing scheduled, after the Commonwealth and the [c]ourt file demonstrated that [Appellant] had failed to appear, [Appellant] was given a second opportunity, if she chose to do so, to present any documentary evidence which would support her position. This was not improperly shifting the burden of proof; rather, it was another chance to rebut the evidence that showed she willfully failed to appear for court and possibly to lend some credibility to her version of events. [Appellant] failed to do so; therefore, this [c]ourt once again found her in direct criminal contempt beyond a reasonable doubt for failing to appear in court.

Trial Court Opinion, 10/25/16, at 8-9.

We agree with the trial court's analysis and conclusion. Appellant does not assert that she did not have proper notice of the court date for which she failed to appear. Instead, she provided an excuse, indeed multiple contradictory excuses, for her failure to appear at the court proceeding without providing any proof to support her claim. The trial court found her explanation to be incredible. Pennsylvania courts have upheld convictions

for direct criminal contempt in similar situations. In ***Commonwealth v. Ferrara***, 409 A.2d 407, 410–411, 412 n.5 (Pa. 1979), our Supreme Court held that two defendants were in direct criminal contempt of court where "the clerk of courts sent notices to the last known addresses of appellants (each of whom [was] released on bail), notifying them of the dates for arraignment and the commencement of trial; however, neither appellant appeared on the specified dates." ***See also Commonwealth v. Edwards***, 703 A.2d 1058, 1060 (Pa. Super. 1997) (holding that the failure to appear in court as required by previous court proceedings may be considered an act of direct criminal contempt when the defendant is finally brought to court); ***Commonwealth v. Marcone***, 410 A.2d 759, 764 n.5 (Pa. 1980) ("there is authority for finding a deliberate and unexcused absence by counsel from a scheduled court appearance to be direct contempt. The gravamen of this type of misconduct is the absence which is witnessed by the court"). Thus, we agree that there was sufficient evidence to establish that Appellant was in direct criminal contempt.

Furthermore, the trial court did not shift the burden to Appellant and thereby require her to prove her innocence, as maintained by Appellant. The Commonwealth established the elements of the crime of contempt beyond a reasonable doubt. The trial court gave Appellant an opportunity to rebut that determination by allowing her to prove that her absence was not volitional. Appellant failed to take advantage of that opportunity. Thus, we

agree with the trial court that there was sufficient evidence to support the conviction of criminal contempt.

In her second issue, Appellant argues that the trial judge, Judge Genece E. Brinkley, abused her discretion and violated due process by refusing to recuse herself from the April 14, 2016 hearing, which Appellant maintains was a new trial for non-summary criminal contempt. Appellant's Brief at 15. Appellant asserts that at the March 9, 2016 proceeding, Judge Brinkley made a credibility determination against Appellant and found her in criminal contempt and accordingly sentenced her. *Id.* at 15. Appellant argues that she had no notice that the March 9, 2016 proceeding would be a contempt hearing and instead believed it was simply a bench warrant hearing. *Id.* at 15. Appellant posits that in response to Appellant's motion to vacate the verdict and sentence of March 9, 2016, Judge Brinkley vacated the sentence and scheduled a criminal contempt trial for April 14, 2016. *Id.* In further support of her claim that the trial judge should have recused, Appellant provides the following argument:

> The defense moved for recusal based on the judge's prior adverse credibility determination in finding [Appellant] guilty and sentencing her for criminal contempt after the bench warrant hearing on March 9, 2016. There was no jurisprudential reason for Judge Brinkley to retain the case for this trial because she was not even the judge who issued the bench warrant in question and it was a non-summary trial involving a non-appearance at a court proceeding months earlier. Nevertheless, the judge denied the recusal motion, thus abusing her discretion and denying due process of law.

* * *

- 14 -

In this case, where [Appellant] had no right to a jury trial, she was entitled to a judge only trial with a judge who had not made an adverse critical credibility determination against her at the vacated proceeding, and who had not thought it appropriate to convict and sentence her for criminal contempt without any notice that there was even a contempt trial taking place.

Appellant's Brief at 18-19.

Our standard of review is well settled:

[Our Supreme] Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.

As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.

[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned. It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. Where a jurist rules that he or she can hear and dispose of

a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

***Commonwealth v. Kearney***, 92 A.3d 51, 60–61 (Pa. Super. 2014) (internal citations and quotation marks omitted). Additionally, we have held that "[i]n general, a judge before whom contemptuous conduct occurs has the power to impose punishment for such conduct and appropriate sanctions without recusing himself. However, recusal is required if there is a running, bitter controversy between the judge and offender." ***Debose***, 833 A.2d at 150.

In addressing Appellant's motion for recusal, Judge Brinkley explained:

In the case at bar, this [c]ourt properly denied [Appellant's] motion for recusal as there was no evidence that this [c]ourt could not preside impartially over [Appellant's] contempt hearing. Indeed, the [c]ourt had granted [Appellant] an actual hearing on her motion in arrest of judgment which, clearly, was not required. [Appellant] then asserted at this very hearing that even though her request for a hearing had been granted, that same judge could not be fair and impartial. This claim is entirely without merit. While it is true that this [c]ourt previously had found [Appellant] guilty of contempt, this second hearing was an opportunity for [Appellant] to present new arguments and evidence to support her claim that her failure to appear on January 27, 2016 had not been willful. This [c]ourt was more than able to listen to the evidence presented at the second contempt hearing and fairly dispose of the case. As this [c]ourt explained at the hearing, "So you have had actual notice that this is now a contempt hearing; and that was done, if there was any problem with notice, to correct that problem with notice. That does not mean in any way that I am not able to be fair to your client, so we'll proceed." [Appellant] produced no evidence that this [c]ourt was biased or prejudiced toward her in anyway [sic].

Trial Court Opinion, 10/25/16, at 10-11 (internal citation omitted).

- 16 -

The sentence issued March 9, 2016, was vacated due to an arguable procedural violation that Appellant was not provided sufficient notice of the contempt hearing. The evidence of record reflects that out of an abundance of caution, the trial court vacated the original contempt finding made on March 9, 2016, provided Appellant notice of a subsequent contempt hearing, and subsequently conducted a contempt hearing on April 14, 2016. Appellant presented no evidence regarding her whereabouts on January 27, 2016, at the March 9, 2016 hearing, and also failed to present any at the April 14, 2016 hearing. Thus, it cannot reasonably be concluded that Judge Brinkley was prejudiced by testimony heard at the March 9, 2016 hearing.

Moreover, in addressing Appellant's petition for recusal, Judge Brinkley asserted that she was not biased toward or prejudiced against Appellant. Trial Court Opinion, 10/25/16, at 11. Appellant has failed to establish otherwise. Furthermore, Appellant does not allege and the record is devoid of any evidence of a running or bitter controversy between Judge Brinkley and Appellant. Because Appellant has failed to establish bias, prejudice, or unfairness necessitating recusal, the trial judge's decision to deny Appellant's request was not an abuse of discretion. Appellant's second claim fails. **See Debose**, 833 A.2d at 151 (recusal not required where court found appellant in contempt, vacated ruling and ordered new hearing where no impartiality on part of judge indicated).

Judgment of sentence affirmed. Case remanded for the correction of a clerical error. Jurisdiction relinquished.

P.J.E. Bender joins the Memorandum.

Judge Bowes files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017