**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jeffrey Michael BORRIN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2010.

Filed Jan. 11, 2011.

---

Nandakumar Palissery, Kingston, for appellant.

Frank P. Barletta, Assistant District Attorney, Wilkes–Barre, for appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, BENDER, BOWES, DONOHUE, SHOGAN, ALLEN, OLSON, AND OTT, JJ.

OPINION BY ALLEN, J.:

Jeffrey Michael Borrin ("Appellant") appeals from the trial judge's order modifying the terms of a prior sentencing order. This Court, sitting *en banc*, is asked to determine whether the trial judge had the inherent authority to change the terms of the original sentencing order to purportedly correct a clerical error. We hold that in the circumstances of this case, the alleged error was not a "clear clerical error," and thus, was not subject to later correction. Therefore, we reverse the trial judge's order, and remand with the instruction that the trial judge reinstate the original sentencing order.

The facts and procedural history of this case are as follows. On July 24, 2005, Appellant, while under the influence of a controlled substance, drove his car into a group of motorcyclists that were participating in a charity event. One person was killed and several others were seriously injured. At the time of the accident, Appellant's child was in the back seat of the car. Shortly thereafter, the Commonwealth filed a criminal information charging Appellant with a variety of offenses.

On March 20, 2006, Appellant entered an open guilty plea to 20 criminal counts. On May 18, 2006, the trial judge sentenced Appellant. During the sentencing hearing, the trial judge noted that Appellant had a history of assaultive behavior and involvement with drugs. R.R. at 18. The trial judge further noted that Appellant was previously arrested for two charges of driving under the influence ("DUI") within an 8 day span. R.R. at 18. In addition, the trial judge explained that in another case, he sentenced a defendant to a mini-mum sentence of four years imprisonment, where the defendant's gross recklessness in starting a fire that killed 100 people. R.R. at 18. The trial judge stated that Appellant's conduct resulting in the death of one person, and injuries of several others, went "beyond any kind of recklessness." R.R. at 18.

The case proceeded to sentencing. The trial judge found that some of the counts merged for sentencing purposes. With regard to the remaining counts, the trial judge sentenced Appellant as follows:

THE COURT:

Count 1, with the mergers, 36 to 72 months.

Aggravated assault, the one with Mrs. Linda Delaney, 16 to 32 months **consecutive.**

The one aggravated assault, Count 4, with Paul Huber, 12 to 24 months **consecutive.**

Count 5, involving Mark Hozlock, 12 to 24 months **consecutive.**

Count 6, involving Michael Jacobs, aggravated assault, 12 to 24 months **consecutive.**

Accidents involving death or severe injury involving William Delany, 16 to 32 months **consecutive.**

Counts 8, 9, 10 and 11, they will all be probation, **consecutive to each other,** one year on each. That's 8, 9, 10 and 11. Endangering the welfare of a child, your own son, sir, three to six months **consecutive.**

Counts 15 and 16, six months **consecutive.** Count 16, six months probation **consecutive.**

There are summaries involving fines. We'll impose the standard range on the fines, plus one carries a mandatory 60 days. That will be **consecutive.**

R.R. at 18–19 (emphasis added). In addition, the trial court credited Appellant 258

days (approximately 8 and 1/2 months) for time served. R.R. at 19.

The next day, on May 19, 2006, a hand-written sentencing order was prepared and signed by the trial judge. The sentencing order stated as follows:

Count 1) Homicide by vehicle while DUI—36 to 72 months

Count 2) Homicide by vehicle—merge with count 1

Count 3) Aggravated assault by vehicle while DUI—16 to 32 months **consecutive to count 1**

Count 4) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to count 1**

Count 5) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to count 1**

Count 6) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to count 1**

Count 7) Accidents involving death/injury—16 to 32 months **consecutive to count 1**

Counts 8, 9, 10 and 11) Accidents involving death/injury—Probation of 1 year **consecutive to each other and count 1**

Count 12) Endangering welfare of a child—3 to 6 months **consecutive to count 1**

Count 13) DUI—merges into count 1

Count 14) DUI—merges into count 1

Counts 15 and 16) Recklessly endangering another person—six months probation **consecutive to count 1**

SUMMARY OFFENSES:

Count 18) Driving while operating privileges suspended—60 days imprisonment **consecutive to count 1**

R.R. at 21–22 (emphasis added).

According to the May 19, 2006 sentencing order, Appellant's aggregate sentence of imprisonment was 4 years and 4 months to 8 years and 8 months, followed by a consecutive term of 4 years and 6 months probation.

Neither the Commonwealth nor Appellant contested the trial judge's sentencing order by filing a post-sentence motion to modify sentence. Appellant did not file an appeal to this Court, nor did the Commonwealth.

On October 29, 2008, the Pennsylvania Department of Corrections sent a letter to the trial judge. R.R. at 23. In this letter, the Department of Corrections informed the trial judge that Appellant had applied for prerelease and requested the trial judge to review the case. R.R. at 23.

On November 17, 2008, the trial judge wrote a letter to the Department of Corrections. R.R. at 24. In this letter, the trial judge stated that the sentencing order was incorrect and that he never intended Appellant's sentences on counts 2 through 18 to run concurrent to each other and consecutive to count 1. R.R. at 24. Rather, the trial judge claimed that he intended to impose the sentences on counts 2 through 18 to run consecutive to each other and all prior counts. R.R. at 24.

On May 26, 2009, the Commonwealth filed a Petition to Clarify Sentence. R.R. at 25–34. The Commonwealth contended that based on the sentencing transcript, Appellant's sentences on the various counts were to run consecutive to each other and all previous counts. The Commonwealth therefore argued that Appellant's aggregate term of imprisonment should have been 7 years and 9 months to 15 and 1/2 years—not 4 years and 4 months to 8 years and 8 months as stated in the sentencing order. In addition, the Commonwealth requested a hearing to determine the trial judge's "intentions" during the sentencing hearing, and moved to

have the trial judge correct and/or clarify its sentencing order. R.R. at 32.

On June 12, 2009, the trial judge held a hearing on the Commonwealth's Petition to Clarify Sentence. At the hearing, the trial judge explained that he intended to impose consecutive sentences "one after another and not concurrent with each other." R.R. at 37.

On that same date, the trial judge granted the Commonwealth's Petition to Clarify Sentence. The trial judge entered an order sentencing Appellant as follows:

Count 1) Homicide by vehicle while DUI—36 to 72 months

Count 2) Homicide by vehicle—merge with count 1

Count 3) Aggravated assault by vehicle while DUI—16 to 32 months **consecutive to count 1**

Count 4) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to counts 1 and 3**

Count 5) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to counts 1, 3 and 4**

Count 6) Aggravated assault by vehicle while DUI—12 to 24 months **consecutive to count 1, 3, 4 and 5**

Count 7) Accidents involving death/injury—16 to 32 months **consecutive to counts 1, 3, 4, 5, and 6**

Counts 8, 9, 10 and 11) Accidents involving death/injury—Probation of 1 year **consecutive to each other and all previous counts**

Count 12) Endangering welfare of a child—3 to 6 months **consecutive to counts 1, 3, 4, 5, 6, 7, 8, 9, 10 and 11**

Count 13) DUI—merges into count 1

Count 14) DUI—merges into count 1

Counts 15 and 16) Recklessly endangering another person—six months proba-tion **consecutive to each other and all previous counts**

Count 18) Driving while operating privi-lege suspended—60 days imprisonment **consecutive to counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 16**

R.R. at 40–41 (emphasis added).

According to the trial court's June 12, 2009 sentencing order, Appellant's aggregate term of imprisonment was 8 years and 9 months to 18 years, to be followed by a consecutive term of 5 years probation.

Appellant filed a timely notice of appeal. On April 20, 2010, this Court, *sua sponte*, granted certification to decide Appellant's appeal *en banc*. Both Appellant and the trial judge have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue for review:

Whether the trial court erred in grant-ing the Commonwealth's "Petition to Clarify Sentence," modifying and in-creasing [Appellant's] original sentence of 54 months (minimum) and 104 months (maximum) to a new sentence of 109 [months] (minimum) and 214 months (maximum) more than 30 days after the original sentence was imposed, a court-signed written sentencing disposition was filed, and where no appeal was tak-en within 30 days.

Brief for Appellant at 2.

In his sole issue on appeal, Appellant contends that the trial judge lacked the inherent authority to modify the terms of the May 19, 2006 sentencing order. Ap-pellant emphasizes that during the May 18, 2006 sentencing hearing, the trial judge merely stated that the counts following count 1 were to run "consecutive," without designating whether they were to run con-secutive to count 1 or each other. As such, Appellant posits that the May 18, 2006 sentencing transcript was ambiguous

and did not clearly evidence the trial judge's intent to impose a series of sentences consecutive to each other and all prior counts. Further, Appellant claims that any doubts regarding the sentencing hearing must be resolved by reference to the May 19, 2006 sentencing order, which expressly stated that all the counts subsequent to count 1 were to run consecutive to count 1. Appellant therefore concludes that the trial judge lacked the authority to correct his alleged error in the June 12, 2009 sentencing order because any error was not apparent on the face of the sentencing transcript.

In the alternative, Appellant argues that the trial judge abused his discretion in modifying Appellant's sentence more than three years after entry of the original sentencing order. To support his contention, Appellant asserts that at the time of the modification, he was close to completing his minimum sentence, and thus, had a settled expectation of finality with regard to the length of his sentence. Appellant also points to the fact that the Commonwealth did not file a post-sentence motion to modify and/or correct the original sentence, and that neither party filed an appeal contesting the sentence.

Finally, Appellant claims that the trial judge's June 12, 2009 sentencing order, which increased his original sentence, violated his rights under the double jeopardy clauses of the United States and Pennsylvania Constitutions.

Conversely, the Commonwealth asserts that the trial judge's June 12, 2009 order did not modify or increase Appellant's sentence, but rather, clarified the terms of the existing sentence. The Commonwealth claims that the trial judge, acting in response to a letter from the Department of Corrections, properly corrected a clerical error that he perceived in the sentencing transcript. In addition, the Commonwealth contends that the trial judge possessed the inherent power to clarify a patent sentencing error at any time, without considering the amount of time that Appellant served on his sentence. For these reasons, the Commonwealth argues that the June 12, 2009 sentence was a valid exercise of a trial judge's authority to correct obvious errors in the record.

Upon review, we agree with Appellant that the trial judge lacked the authority to correct the alleged error because the error did not qualify as a clear clerical error.

■ The issue in the case, whether the trial judge had the authority to correct an alleged sentencing error, poses a pure question of law. *See Commonwealth v. Holmes,* 593 Pa. 601, 933 A.2d 57, 65 (2007). Accordingly, our scope of review is plenary and our standard of review is *de novo. See id.*

■ It is well-settled in Pennsylvania that a trial court has the inherent, common-law authority to correct "clear clerical errors" in its orders. *Commonwealth v. Johnson,* 860 A.2d 146 (Pa.Super.2004), *overruled in part on other grounds by Commonwealth v. Robinson,* 931 A.2d 15 (Pa.Super.2007) (*en banc*); *Commonwealth v. Quinlan,* 433 Pa.Super. 111, 639 A.2d 1235 (1994); *Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219 (1988); *Commonwealth v. Meyer,* 169 Pa.Super. 40, 82 A.2d 298 (1951). A trial court maintains this authority even after the expiration of the 30 day time limitation set forth in 42 Pa.C.S.A. § 5505 for the modification of orders. *See* 42 Pa.C.S.A. § 5505;[1]

---

1. 42 Pa.C.S.A. § 5505 provides: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination

*Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970).

A trial court's inherent authority to correct clerical errors, while considered a "time-honored" tradition, *Holmes*, 933 A.2d at 65, has been described by our Supreme Court as a "limited judicial power" in its scope, *id.* at 67.

An example of such a limitation is found in this Court's decision in *Quinlan*. In *Quinlan*, the sentencing court stated on the record that the defendant's sentence, in addition to a term of incarceration of 11 and 1/2 to 23 months, included a 5 year probationary period. The sentencing order, however, did not include the probationary period. Following the judgment of sentence, the defendant did not file a direct appeal to this Court.

The defendant then completed his term of incarceration, albeit in part while on parole. Two and a half years after the sentencing order, at a time when the defendant had finished his maximum term sentence as stated in the sentencing order, the trial court entered a retroactive order re-sentencing the defendant to a 5 year term of probation. The *Quinlan* panel held that in this scenario, the trial court could not "reach[ ] back two and one-half years" to correct the clerical error and re-sentence the defendant to the term of probation. 639 A.2d at 1240. According to the *Quinlan* panel, the trial court acted

"without authority of either rule or case law." *Id.* at 1241.

 Although the *Quinlan* panel suggested that its decision rested on double jeopardy grounds, *see id.* at 1239–40 and 1241 (Popovich, J. dissenting), the Court did not expressly find that the defendant's double jeopardy rights were violated. We endorse the result reached by the *Quinlan* panel, but clarify that its holding is limited to the facts of that case and is based on double jeopardy grounds. Therefore, we refine *Quinlan*, and announce what was left unexpressed in that decision: The double jeopardy clauses of the United States and Pennsylvania Constitutions [2] prohibit a trial court from exercising its authority to correct a clerical error to increase a defendant's sentence when the defendant fully served the maximum term of his sentence, as stated in the sentencing order, and the direct appeal had been completed or the time for appeal had expired. *See People v. Williams*, 14 N.Y.3d 198, 899 N.Y.S.2d 76, 925 N.E.2d 878, 891 (2010) (collecting cases) ("[O]nce a defendant is released from custody ... after serving the period of incarceration that was ordered by the sentencing court, and the time to appeal the sentence has expired or the appeal has been finally determined, there is a legitimate expectation that the sentence ... is final and the Double Jeopardy Clause prevents a court from [later increasing] the sentence[.]").[3]

---

of any term of court, if no appeal from such order has been taken or allowed." *Id.*

**2.** The protections afforded by the Double Jeopardy Clause of the United States Constitution are coextensive with the protection afforded by the Double Jeopardy Clause of the Pennsylvania Constitution. *Commonwealth v. Sojourner*, 513 Pa. 36, 518 A.2d 1145, 1149 n. 6 (1986).

**3.** In the consolidated cases of *Williams*, the trial courts, using their inherent authority to

correct illegal sentences, re-sentenced the defendants to mandatory terms of post-release supervision after the defendants completed their terms of incarceration. The Court of Appeals of New York (the highest court in the state of New York) concluded that although the trial courts possessed the power under the common law to correct the sentences, the Double Jeopardy Clause prohibited re-sentencing a defendant once the defendant fully served his sentence. This conclusion, as noted in the *Williams* opinion, has strong support from the case law of the Federal Circuit

In addition to the restraints imposed by the double jeopardy clauses on a trial court's authority to correct clerical errors, an alleged error must qualify as a clear clerical error (or a patent and obvious mistake) in order to be amenable to correction. In discussing a trial court's authority to correct illegal sentences, our Supreme Court has stated that it is "the obviousness of the illegality, rather than the illegality itself, that triggers the court's inherent power." *Holmes*, 933 A.2d at 66. The High Court has also cautioned that "the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient." *Id.* As a matter of general guidance, our Supreme Court has sanctioned the use of the inherent authority in cases that "involve *clear errors* in the imposition of sentences that were incompatible with the record or black letter law[.]" *Id.* (emphasis added).

This Court's case law has addressed the situations where, as here, the terms of a defendant's sentence as stated at the sentencing hearing conflict (or are deemed incompatible) with the terms of the defendant's sentence as stated in the sentencing order.

In these circumstances, for a trial court to exercise its inherent authority and enter an order correcting a defendant's written sentence to conform with the terms of the sentencing hearing, the trial court's intention to impose a certain sentence must be obvious on the face of the sentencing transcript. *Johnson*, 860 A.2d at 153 (citing *Kubiac*, 550 A.2d at 231) ("A correction may [occur] . . . where the sentencing judge clearly stated the sentence on the record."). Stated differently, only when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a "clear clerical error" on the face of the record, and the sentencing order subject to later correction. *See Johnson*, 860 A.2d at 153.

If, on the other hand, a trial court's stated intentions during the sentencing hearing are ambiguous, then the terms of the sentence in the sentencing order control, and the trial court cannot correct its perceived mistake. *See Commonwealth v. Isabell*, 503 Pa. 2, 467 A.2d 1287, 1293 (1983) ("Generally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence."); *Daddino*, 5 F.3d at 266 (collecting cases) (concluding that where the orally pronounced sentence is ambiguous, the sentencing order should be used to clarify the actual intention of the sentencing judge). This is because the alleged error in the sentencing transcript is not a "clear clerical error," but rather, is an ambiguity that must be resolved by reference to the written sentencing order. *See Daddino*, 5 F.3d at 266.

For example, in *Kubiac*, a panel of this Court found that the trial court properly corrected a clerical error. In that case, the trial court clearly and unambiguously stated on the record at the sentencing hearing that the defendant was sentenced to a term of imprisonment of 5 to 20 years. However, the sentencing order signed by the trial court incorrectly stated that the sentence was 5 to 10 years imprisonment. Five months later, the trial court corrected

the defendant's sentence to 5 to 20 years. The *Kubiac* panel found the correction to be within the trial court's inherent authority to fix clear clerical errors. 550 A.2d at 231 ("[A]n oral sentence which is on the record, written incorrectly by the clerk of courts, and then corrected by the trial judge, is [ ] a clerical error.").

In contrast, a panel of this Court in *Johnson* concluded that the trial court did not possess the inherent authority to correct a sentencing mistake where the alleged error was not a clear clerical error. In that case, the defendant was sentenced, in pertinent part, to a term of 3 to 8 years imprisonment for a burglary conviction and 3 to 8 years imprisonment for a conspiracy conviction. At the sentencing hearing, the trial court did not state on the record whether the defendant's sentences for burglary and conspiracy were to run concurrently or consecutively. The signed sentencing order, however, stated that the sentences were to run concurrently. The trial court later re-sentenced the defendant to 3 to 8 years imprisonment for the burglary conviction, and imposed a consecutive term of 3 to 8 years imprisonment for the conspiracy conviction.

On appeal, the Commonwealth argued that the defendant's second sentence was valid because the trial court corrected a clerical error. The Commonwealth maintained that the trial court originally "intended" to impose consecutive sentences, but erroneously recorded the sentences as concurrent in the sentencing order. The *Johnson* panel disagreed, finding that the "alleged error [ ] is neither patent nor obvious—in fact, it is debatable whether it was a mistake at all." 860 A.2d at 153. Because the trial court's purported sentencing intentions (*i.e.* that the sentences were to run consecutively) were not clear on the face of the sentencing transcript, the *Johnson* panel concluded that the trial court did not correct a clear clerical error.

Similar to the *Johnson* court, in *Commonwealth v. Cooper*, 333 Pa.Super. 559, 482 A.2d 1014 (1984), a panel of this Court found that the trial court did not have the inherent authority to correct an error that was not apparent on the face of the sentencing transcript. In *Cooper*, the trial court modified the defendant's original sentence to include participation in a drug program as a condition of probation and/or parole. In finding that the trial court lacked the authority to include the drug program as part of the defendant's sentence, the *Cooper* panel explained:

> ... [I]n the instant case, the omission of drug therapy from the original sentence was not patently erroneous. Though the trial court noted at the sentencing hearing that the presentence report recommended that the [defendant's] parole be supervised by the drug or alcohol unit of the Pennsylvania Board of Probation and Parole (and also that the [defendant's] attorney recommended inpatient rehabilitation), *the record does not indicate that the trial judge expressly intended to impose participation in a drug and alcohol program as a condition of parole. . . .* In light of the circumstances, it does not appear likely that the omission of drug therapy as a condition of parole was an obvious or patent mistake.

482 A.2d at 1021 (emphasis added). Accordingly, the *Cooper* panel concluded that in the absence of a clear clerical error, the trial judge improperly modified the defendant's sentence.

▮ Finding strong guidance in our case law, this Court concludes that the trial judge lacked the inherent authority to modify Appellant's sentence in its sentencing order dated June 12, 2009.

■ Here, during Appellant's original sentencing hearing, the trial judge stated on the record that the relevant counts subsequent to count 1 were to run "consecutive" without any further elaboration. Although the trial judge subsequently communicated to the Department of Corrections that he intended to impose the counts following count 1 consecutive to each other and all prior counts, the trial judge's intentions in this regard were not clearly and unequivocally expressed at sentencing. Rather, on the face of the sentencing transcript, the trial judge's use of the word "consecutive" was ambiguous. *See United States v. Moyles*, 724 F.2d 29, 30 (2d Cir.1983) (concluding that court's statement that "the last two sentences shall run consecutively" was ambiguous because the two sentences could be understood as either running consecutive to one another or consecutive to one another and also to the prior counts). Indeed, the ambiguity is further highlighted by the fact that unlike the counts resulting in a term of imprisonment (counts 1, 3, 4, 5, 6, 7, 12, 15, 16, 18), where the trial judge merely ordered them to be served "consecutive," on certain probationary counts (counts 8, 9, 10 and 11), the trial judge expressly stated that they were to "run consecutive to each other." R.R. at 18. In light of this record, the trial judge may have intended the relevant counts resulting in incarceration to run consecutive to each other and all prior counts; however, it is just as plausible (or even more plausible) that the trial judge intended the same counts to run consecutive to count 1 only. Where the evidence of record equally supports two inconsistent inferences, it proves neither. *Commonwealth v. Johnson*, 818 A.2d 514, 521 (Pa.Super.2003).

The sentencing transcript does not evidence a clear clerical error because it is ambiguous and open to competing interpretations. Given the trial judge's ambig-uous use of the word "consecutive" during the sentencing hearing, the terms of the written sentencing order dated May 19, 2006 must control and resolve the ambiguity. *See Isabell*, 467 A.2d at 1293; *Daddino*, 5 F.3d at 266 ("[W]e hold that the October 9th written order, which is unambiguous on its face, serves to resolve the ambiguities in the oral pronouncement made the same day."). The May 19, 2006 sentencing order clearly provides that the relevant counts subsequent to count 1 were to run "consecutive to count 1." The trial judge, consequently, lacked the inherent authority to modify Appellant's sentence and order the counts following count 1 to run consecutive to each other and all prior counts.

Were this Court to hold otherwise, we would permit a trial court to retroactively alter a defendant's sentence to conform to the court's "intentions" when those intentions are not clearly expressed on the record. As noted by our Supreme Court, this is problematic: "[W]e are of the opinion that such alleged inadvertence [concerning a trial court's unexpressed intentions during a sentencing hearing] cannot be tolerated as a matter of public policy. The possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." *Commonwealth v. Allen*, 443 Pa. 96, 277 A.2d 803, 807 (1971) (citation and internal quotation marks omitted). Accordingly, we cannot accept the trial judge's proclamation of his own intentions because those intentions were only known to the trial judge himself and do not appear on the face of the sentencing transcript.

The trial judge, therefore, committed an error of law when he modified Appellant's sentence on June 12, 2009 and ordered the relevant counts to run consecutive to each other and all prior counts. *See Johnson*,

860 A.2d at 153; *Cooper,* 482 A.2d at 1021; *see also United States v. Flint,* 178 Fed. Appx. 964, 969 (11th Cir.2006) ("There is no clerical error present here.... To the extent that the district court ambiguously stated [the defendant's] sentence at the sentencing hearing, the sentence was clarified in its written judgment."); *Cubba v. State,* 210 P.3d 1086, 1089 (Wyo.2009) (finding no clerical error because there was an ambiguity in the sentencing transcript, where "the court made two statements, one reflecting an intent to impose consecutive sentences and the other suggesting an intent to impose concurrent sentences," and the sentencing order resolved that ambiguity). In sum, there was no clear clerical error on the face of the sentencing transcript that would permit the trial judge to exercise its inherent authority.[4]

Notably, our decision does not render the Commonwealth and/or a trial court unable to rectify perceived discrepancies between the oral sentence and the sentencing order when those discrepancies are ambiguous and do not qualify as a clerical error. For instance, in this case, if the Commonwealth felt that the original sentencing order did not reflect the trial judge's intentions during the sentencing hearing, the Commonwealth could have filed a post-sentence motion to modify the sentence under Pa.R.Crim.P. 720. *See Isabell,* 467 A.2d at 1293 ("We note that the Commonwealth, not [the defendant], was obligated to petition for modification of the written sentence if it did not conform to the oral intentions of the sentencing judge."). In accordance with 42 Pa. C.S.A. § 5505, the trial judge could also have modified the sentencing order, *sua sponte,* within 30 days of its entry so long as an appeal had not been filed. *See* 42 Pa.C.S.A. § 5505; *Commonwealth v. Walters,* 814 A.2d 253, 255–56 (Pa.Super.2002) ("Under [42 Pa.C.S.A. § 5505,] [t]rial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken. Generally, once the thirty-day period is over, the trial court loses the power to alter its orders. When an appeal is taken, the trial court has no jurisdiction to modify its sentence."). Once the time period for these options elapsed, however, the trial judge could only correct its written sentencing order if the sentencing transcript evidenced a clear clerical error. Because the sentencing transcript in this case failed to display a clear clerical error, this Court is compelled to reverse the trial judge's order.

Appellant additionally contends that even if there was a clerical error, the trial judge abused his discretion by correcting the clerical error. Relying exclusively on *Quinlan,* Appellant claims that the trial judge did not have the common law authority to correct a clerical error more

---

4. In reaching our decision we are cognizant that in *Commonwealth v. Klein,* 566 Pa. 396, 781 A.2d 1133, 1135 (2001), our Supreme Court found that a patent error existed even though the error was not obvious on the face of the sentencing order, but was based on third-party information. In *Klein,* the trial court, on June 23, 1999, credited the defendant for 33 days of time served and ordered time served as the minimum sentence. Two days later, prison officials informed the trial court that the defendant, in fact, served only 1 day in prison. On June 30, 1999, the trial court corrected the sentencing order to indicate 1 day of time served, and imposed a minimum sentence of 1 month.

*Klein* is distinguishable from the instant case. In *Klein,* "[a]t the original sentencing hearing, the trial court made clear that its intent was that [the defendant] would serve one month in prison," which necessarily included proper calculation of time served. *Id.* at 1135. In this case, by contrast, the trial judge's intentions were not clearly expressed during the sentencing hearing. Therefore, *Klein* is factually inapposite.

477

than 3 years after Appellant began serving his sentence. Appellant emphasizes that in *Quinlan,* the trial court purported to correct a clerical error 2 and 1/2 years after the defendant was sentenced, and a panel of this Court found the correction unlawful.

We reject Appellant's argument. As explained above, the defendant in *Quinlan* already completed his maximum sentence when the trial court attempted to correct the clerical error. Here, Appellant did not complete his minimum sentence when the trial judge sought to correct the perceived clerical error, and Appellant had not yet begun to serve his term of incarceration on the counts that were subject to modification. Moreover, this Court has limited *Quinlan* to the facts of that case and concluded that *Quinlan's* holding rested not on common law principles, but rather, on double jeopardy grounds. Consequently, we decline to impose, as a matter of common law, a limitation on a trial court's inherent authority to correct clerical errors based on arbitrary considerations of elapsed time and/or mathematical percentages of time served. Instead, we conclude that in the absence of a statutory directive to the contrary, a trial court's common law authority to correct clerical errors is limited only to the extent prohibited by the United States and Pennsylvania Constitutions.

Finally, Appellant argues that the trial judge violated Appellant's double jeopardy rights by correcting the alleged clerical error and increasing the length of his sentence. Appellant contends that he had an expectation of finality with regard to the length of his sentence after the time for filing an appeal had passed. Due to our disposition, we decline to address this issue. *See C.B. ex rel. R.R.M. v. Dep't of Pub. Welfare,* 786 A.2d 183, 183 (Pa.2001) ("It is well-settled, of course, that when a case raises both a constitutional and non-constitutional issue, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

For the above-stated reasons, we reverse the trial judge's June 12, 2009 sentencing order and remand with instructions that the trial judge reinstate its May 19, 2006 sentencing order.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.