J-S35019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ANTHONY LOPEZ | : | |
| | : | |
| Appellant | : | No. 270 MDA 2025 |

Appeal from the Judgment of Sentence Entered July 11, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000661-2021

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: NOVEMBER 4, 2025**

David Anthony Lopez (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence imposed following his conviction, by a jury, of persons not to possess firearms (firearms prohibited), and his guilty plea to possession with intent to deliver a controlled substance (PWID).[1] Appellant raises a sole challenge to the denial of his pre-trial motion to suppress evidence, asserting the search warrant that police executed at his residence lacked probable cause, and, therefore, all evidence obtained in connection with the invalid warrant should have been suppressed. After careful review, we affirm Appellant's convictions and the denial of his suppression motion, but vacate

_____

[1] 18 Pa.C.S.A. § 6105(a)(1); 35 P.S. § 780-113(a)(30).

the judgment of sentence and remand for correction of a clear clerical error in Appellant's sentencing order.

The suppression court summarized the factual history as follows:

On April 27, 2021, [Lycoming County] Narcotics Enforcement Unit (NEU) Detective Tyson Havens ([Detective] Havens) obtained a search warrant for 1037 Dewey Avenue, Apartment #2, City of Williamsport [("the residence" or "Appellant's home")]. It was alleged that the [residence was leased by Appellant] and Kirsten Clark [(Ms. Clark)]. [Immediately prior to police] executing the warrant, [Detective] Havens[, who was conducting surveillance of the residence, saw Appellant and Ms. Clark enter a Chevy Cobalt parked near the residence and drive away. Detective Havens followed the vehicle and] initiated a traffic stop [based upon the vehicle having unlawful window tint.] [Appellant] was searched and police found $3[,]000.00 in cash, two (2) cellular phones[,] along with house and safe keys. After the warrant was executed [at the residence], NEU found two (2) ounces of crack cocaine along with a safe, additional cocaine found in other places in the residence, cash, a cutting plate with [a] razor blade, and a Ruger 9mm pistol[,] which had been reported stolen. Because of [Appellant's] prior record of drug[-related convictions], he was a person unable to [legally] possess a firearm. [Ms.] Clark was interviewed and she confirmed to the police that [Appellant] was the owner of the safe and cocaine found in the residence.

Suppression Court Opinion and Order, 3/11/22, at 1-2.

The affidavit of probable cause (Affidavit) that Detective Havens submitted in applying for the search warrant is pertinent to this appeal. The Affidavit provides, in relevant part, as follows:

[A confidential informant (the CI)] has been cooperating with []NEU since 2018. The CI has made approximately 16 controlled crack cocaine, methamphetamine, and opiate transactions from approximately 10 drug dealers in the Williamsport area. During most of the controlled drug transactions, the CI was equipped with electronic surveillance device[]s. Those devices corroborated the CI's accounts of said drug transactions. The CI also introduced undercover [police] officer[]s to five separate individuals,

resulting in the undercover officer[]s making hand-to-hand drug transaction[s] with said drug dealers. The []hand-to-hand drug purchases led to the arrest/pending arrests of 14 persons for illegal drug distribution. The CI's previously[-]provided information led to three separate search warrants where[, upon their execution,] illegal drugs, firearms, and cash were found/seized. The CI's information has always been proven reliable through electronic surveillance, undercover officer observations, search warrants, and arrests.

On [April 26, 2021, Detective Havens] met with [the CI,] who provided the following information: That on [April 24, 2021,] at approximately 1600 [hours], he/she provided his/her family member[] [(CI's relative)] a ride to [Appellant's home] to purchase crack cocaine and powder cocaine. Upon arrival at the residence, the CI and [CI's relative] walked onto the front porch. [CI's relative] knocked on the door, and it was answered by [Appellant]. The CI recognized [Appellant] from the Lycoming County Prison. The CI watched [CI's relative] step inside the front door and hand [Appellant] a large amount of cash. [Appellant] then handed [CI's relative] something in return. While the front door of [the residence] was opened, the CI observed what he/she believed was an AR-15 rifle with [a] "banana clip," and a hunting rifle leaned against a staircase just inside the door. Following the transaction, the CI and [CI's relative] returned to the CI's vehicle, at which time [CI's relative] removed four plastic sandwich bags from his/her pocket and displayed them to the CI. The CI advised that [CI's relative] showed [the CI] four ounces of crack cocaine and powder cocaine (two ounces each). [CI's relative] advised the CI that he/she bought the crack and powder cocaine for $1[,]800.00 per ounce. [CI's relative] also told the CI that [Appellant] has two AR-15's. Approximately 20 minutes later, the CI transported another family member to [the residence]. Prior to doing so, the family member placed a telephone call to someone and asked that they provide him/her with crack cocaine. Upon arrival at [the residence], the CI watched the family member go up onto the front porch and meet with [Appellant], who handed him/her something. Once the family member returned to the vehicle, he/she showed the CI that [Appellant] provided them with four "50's" of crack cocaine packaged in small green bags.

While speaking with the CI, [Detective Havens] drove him/her to the area of the 1000 block of Dewey Ave[.], at which time he/she pointed out [the residence] … as the [location] where

- 3 -

the drug/gun activity took place. While there, [Detective Havens] observed a burgundy Chevy Cobalt … parked along the north side of the residence. A … [records] check of the [license plate number on] the vehicle showed the registered owner to be [Ms.] Clark of 1037 Dewey Ave., apt[. ]#2, Williamsport. A check of [Ms.] Clark's Facebook.com profile revealed images of [Appellant] …. Several minutes later (after [Detective Havens] dropped the CI off), [Detective Havens] observed [Appellant] and Lindsay Williams [(Mr. Williams)] exit the front … door for [the residence] and converse on the sidewalk. [Detective Havens is] familiar with [Mr.] Williams and ha[s] been part of a previous investigation where [Mr. Williams] was arrested for delivering heroin to a CI. ….

A criminal history check of [Appellant] revealed … [that Appellant's] previous convictions make him a person not to possess firearms. …. A [records] search showed [Appellant] lives at [the residence]. A [records] check of [Ms.] Clark showed that she also lives at [the residence].

Based on the above information, [police have] probable cause to believe that [Appellant] is currently utilizing [the residence] to store and distribute crack and powder cocaine, and is currently in possession of at least two firearms[,] while being a person not to possess firearms.

Affidavit, 4/26/21, ¶¶ 15-19 (paragraph numbering omitted; some capitalization modified).

The Commonwealth charged Appellant with one count each of firearms prohibited and PWID, as well as receiving stolen property (RSP).[2] Appellant filed his suppression motion on July 16, 2021. Appellant asked the suppression court to schedule a hearing, and thereafter suppress all evidence seized in connection with execution of the search warrant. Omnibus Motion,

_____

[2] 18 Pa.C.S.A. § 3925(a).

7/16/21 (Prayer for Relief). Appellant alleged the Affidavit failed to establish probable cause existed, where it was "latent with hearsay" and based on no "first[-]hand knowledge." *Id.* ¶ 26. Appellant emphasized that, per the Affidavit, the CI did not personally engage in a drug transaction with Appellant; rather, the CI recounted to police his/her family members' accounts of their purported purchase of drugs from Appellant. *Id.* ¶¶ 19-22. According to Appellant, "[t]his story relayed by the CI does not establish probable cause as he or she did not witness a drug transaction." *Id.* ¶ 25.

The suppression hearing occurred on August 20, 2021. Appellant testified as the sole defense witness and discussed video surveillance evidence, captured by the surveillance system at Appellant's home on the night in question, which the trial court admitted into evidence. *See* N.T., 8/20/21, at 7-19; Defense Ex. 1. The Commonwealth, in lieu of presenting any witnesses, relied upon the "four corners" of the Affidavit in asserting that probable cause existed. *Id.* at 4, 20; Commonwealth Ex. 1.

Following the close of evidence at the suppression hearing, Appellant argued that the four corners of the Affidavit failed to establish probable cause, asserting it "is filled with hearsay within hearsay[.]" N.T., 8/20/21, at 22-23. The Commonwealth countered the Affidavit was supported by probable cause and also sufficiently established the CI's reliability. *Id.* at 23. On March 11, 2022, the suppression court entered its opinion and order denying Appellant's suppression motion.

For trial purposes, the charge of firearms prohibited was severed from the remaining charges and tried by a jury. At the conclusion of trial on May 1, 2023, a jury found Appellant guilty.

On July 11, 2023, following a guilty plea colloquy, Appellant pled guilty to PWID. The trial court accepted the plea as voluntarily tendered. Upon the Commonwealth's motion, the trial court dismissed the RSP charge.

On June 27, 2023, the trial court imposed sentence on Appellant's conviction of firearms prohibited.[3] Regarding the PWID conviction, on July 11, 2023, the trial court sentenced Appellant to one to two years' incarceration, to be served concurrently with the sentence for firearms prohibited. Appellant did not file an appeal or post-sentence motions.

On April 18, 2024, Appellant filed a timely *pro se* petition for collateral relief pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546. The PCRA court appointed Appellant PCRA counsel, who filed an

---

[3] As we elaborate *infra*, anomalies exist regarding the maximum term of Appellant's sentence for firearms prohibited. At the sentencing hearing, the trial court initially stated that it imposed a sentence of 60 to **72** months in prison. N.T., 6/27/23, at 4. However, shortly thereafter, the court clarified, "Correct it if I misspoke, but [Appellant's sentence] was 60 to **120**" months in prison. **Id.** at 5 (emphasis added). However, despite the trial court's express correction, its written sentencing order – as well as the trial court docket – states that the sentence imposed was "sixty (60) to **seventy-two** (72) months" of imprisonment. Sentencing Order, 6/27/23, at 1 (emphasis added). We also observe that on the same date of the sentencing order, the trial court issued a signed "Memorandum of Order," directed to the Warden of the Lycoming County Prison, which stated that Appellant's sentence was "60 – **120** months" of imprisonment. Memorandum of Order, 6/27/23 (emphasis added).

amended petition. Appellant asserted that he had asked his trial counsel to file a direct appeal, and requested that the PCRA court reinstate his appeal rights, *nunc pro tunc*. Amended PCRA Petition, 1/16/25, ¶¶ 14, 16.

On February 25, 2025, the PCRA court granted PCRA relief and reinstated Appellant's direct appeal rights, *nunc pro tunc*. Appellant thereafter filed a *nunc pro tunc* notice of appeal, followed by a court-ordered concise statement pursuant to Pa.R.A.P. 1925(b). On April 7, 2025, the trial court issued a brief Rule 1925(a) opinion stating it relied upon the reasoning contained in the suppression court's prior opinion and order. **See** Trial Court Opinion, 4/7/25.

On appeal, Appellant presents a single issue for our review: "Did the lower court err by failing to suppress evidence seized following a search warrant based on hearsay and no personal knowledge from the detective?" Appellant's Brief at 8.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Lewis**, ___ A.3d ___, 37 EAP 2024 (Pa. filed Sept. 25, 2025) (citations omitted). "We are bound by the facts found by the [suppression] court so long as they are supported by the record, but we review its legal conclusions *de novo*." **Commonwealth v. Rivera**, 316 A.3d 1026, 1031 (Pa. Super. 2024). "Our scope of review is

limited to the record of the suppression hearing." ***Lewis***, ***supra***, at 8 (citation omitted).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution mandate that search warrants must be supported by probable cause. ***Commonwealth v. Johnson***, 240 A.3d 575, 584 (Pa. 2020); ***see also*** Pa.R.Crim.P. 203(B) ("No search warrant shall issue but upon probable cause supported by one or more affidavits[.]").

> "Probable cause exists where the facts and circumstances within the affiant's knowledge[,] and of which he has reasonably trustworthy information[,] are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." ***Commonwealth v. Jones***, 988 A.2d 649, 655 (Pa. 2010) (citation omitted). When considering whether probable cause exists, we consider the totality of the circumstances. ***See Commonwealth v. Clark***, 602 A.2d 1323, 1325 (Pa. Super. 1992).

***Commonwealth v. Adorno***, 291 A.3d 412, 415-16 (Pa. Super. 2023) (citations modified).

> The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. A search warrant is defective if the issuing authority has not been supplied with the necessary information.

***Commonwealth v. Huntington***, 924 A.2d 1252, 1255 (Pa. Super. 2007) (internal citations and quotation marks omitted); ***see also Johnson***, 240 A.3d at 585 ("[A] reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, nontechnical

manner." (citation and quotation marks omitted)).  Probable cause "require[s]

**only a probability**, and not a *prima facie* showing, of criminal activity."

***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (citation and

quotation marks omitted; emphasis in original); ***see also Commonwealth***

***v. Cahill***, 324 A.3d 516, 523 (Pa. Super. 2024) ("Probable cause does not

require certainty, but rather exists when criminality is one reasonable

inference, not necessarily even the most likely inference." (citation omitted)).

> This Court has stated that

> [o]ur review of a challenge to a search warrant based on an affidavit of probable cause is limited to "the information within the four corners of the affidavit." ***Commonwealth v. Batista***, 219 A.3d 1199, 1202 (Pa. Super. 2019) (quoting ***Commonwealth v. Rogers***, 615 A.2d 55, 62 (Pa. Super. 1992) and citing Pa.R.Crim.P. 203(D)).  Thus, a reviewing court "may not conduct a *de novo* review of the issuing authority's probable cause determination" but, instead, is tasked simply with the duty of ensuring the issuing authority "'had a substantial basis for concluding' that probable cause existed." ***Batista***, 219 A.3d at 1202 (quoting ***Commonwealth v. Huntington***, 924 A.2d 1252, 1259 (Pa. Super. 2007) and ***Illinois v. Gates***, 462 U.S. 213, 238-39 (1983)).  Unless the issuing authority had no substantial basis for its decision, a reviewing court must affirm.  ***Commonwealth v. Lyons***, 79 A.3d 1053, 1064 (Pa. 2013) (citing ***Commonwealth v. Johnson***, 42 A.3d 1017, 1031 (Pa. 2012)).  ….

***Commonwealth v. Shackelford***, 293 A.3d 692, 698 (Pa. Super. 2023)

(footnote omitted; citations modified); ***see also Gates***, 462 U.S. at 236 ("A

grudging or negative attitude by reviewing courts towards warrants is

inconsistent with the Fourth Amendment's strong preference for searches

conducted pursuant to a warrant; courts should not invalidate warrants by

interpreting affidavits in a hypertechnical, rather than a commonsense, manner." (citation and quotation marks omitted)).

We additionally observe that "[a]t a suppression hearing, the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained." **Commonwealth v. Heidelberg**, 267 A.3d 492, 498 (Pa. Super. 2021) (*en banc*) (citation and quotation marks omitted); **see also** Pa.R.Crim.P. 581(H). Finally, the suppression of evidence "is a most extreme remedy that can be justified only when it is necessary to vindicate fundamental rights or to correct or deter police abuse." **Huntington**, 924 A.2d at 1259 (citation and quotation marks omitted).

Instantly, Appellant claims the suppression court improperly denied his suppression motion, where the Affidavit was (1) based substantially upon uncorroborated hearsay that the CI provided to the affiant, Detective Havens; and (2) unsupported by probable cause. **See** Appellant's Brief at 14-24. Appellant points out that "Detective Havens did not personally observe the transaction between [] Appellant and [] CI's [relative]. Detective Havens relied on statements of the CI, who also had not seen the transaction take place." **Id.** at 18; **see also id.** at 23 ("[T]here was no indication that this was a controlled buy; in fact, Detective Havens was informed of the transaction [involving Appellant and CI's relative] after it had occurred.").

Appellant further complains that "[t]he CI believed that [he/she] saw an AR[-]15 and a hunting rifle against the staircase inside [Appellant's home], but 'believe' does not establish probable cause; if anything, it amounts to suspicion based on hearsay." *Id.* at 19. *But see also id.* at 17 ("The information provided to the CI was from [CI's relative], who had personal knowledge, but the CI did not personally see any of the alleged firearms in Appellant's home."). Appellant also points out that the firearms that the CI and CI's relative reported viewing inside Appellant's home were "different from the one ultimately seized from Appellant's [home]." *Id.* at 20.

According to Appellant, "Detective Havens did not take steps to corroborate the information provided by the CI." *Id.* at 23; *see also id.* ("Detective Havens did not conduct police surveillance on Appellant's [home] prior to applying for a search warrant"). Finally, Appellant contends there is no "indication that the drugs [purportedly purchased from Appellant by CI's relative] were field-tested." *Id.* at 21.

The Commonwealth counters that the suppression court properly denied Appellant's suppression motion, where the Affidavit established probable cause existed, as well as the CI's reliability. *See* Commonwealth Brief at 4-8. The Commonwealth points out that the CI personally observed CI's relative knock on the front door to Appellant's home and hand Appellant a large quantity of cash in exchange for a small item. *Id.* at 7. When CI's relative

- 11 -

returned to the CI's vehicle, they showed the CI narcotics that CI's relative had purportedly just purchased from Appellant. *Id.*

The Commonwealth further argues that although "no drugs were recovered or tested" in this case, such evidence "is unnecessary," where

> the Affidavit's description of the [CI's] prior cooperation with law enforcement establishes the [CI] as someone personally familiar with the sale and purchase of narcotics[,] and provides a basis for the common-sense conclusion that the [CI] would have a good idea whether he or she was looking at cocaine.

*Id.* at 7-8 (capitalization modified). Regarding the CI's reliability, the Commonwealth points out that the Affidavit asserted the CI "had participated in 16 controlled buys (including buys for crack cocaine), … and provided information that led to three prior search warrants that resulted in the seizure of illegal drugs, firearms, and cash." *Id.* at 5-6 (citing Affidavit, 4/26/21, at 4).

Finally, the Commonwealth claims that "[w]hile no corroboration of the CI's observations of the suspected drug transactions was available, [Detective Havens] took steps to confirm what he could." *Id.* at 6. The Commonwealth points out that the CI, while traveling in Detective Havens's vehicle, confirmed that Appellant's home was the place where the drug/gun activity took place. *Id.* The Commonwealth further points out that, while conducting surveillance of the residence, Detective Havens observed Appellant outside conversing with Mr. Williams, a known drug dealer. *Id.*

The Pennsylvania Supreme Court has held that

a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or where the informant has provided accurate information of criminal activity in the past**, **or** where the informant himself participated in the criminal activity.

*Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa. 2011) (internal citations omitted; emphasis added); *see also Shackelford*, 293 A.3d at 699. "[U]nder the totality-of-the-circumstances approach, there is no talismanic recitation of a particular phrase with respect to 'reliability' or 'basis of knowledge' that will either be required or will suffice to conclusively establish, or conclusively disaffirm, the existence of probable cause." *Id.* at 1292.

It is established that

[h]earsay information is sufficient to form the basis of a search warrant as long as the issuing authority has been provided with sufficient information to make a "neutral" and "detached" decision about whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing court is simply to verify that the issuing magistrate had a "substantial basis for concluding that probable cause existed." **The uncorroborated hearsay of an unidentified informant may be accepted as a credible basis for issuing a search warrant if the affidavit of probable cause avers circumstances that support the conclusion that the informant was credible.**

*Huntington*, 924 A.2d at 1255 (citations omitted; emphasis added); *see also Commonwealth v. Singleton*, 603 A.2d 1072, 1074 (Pa. Super. 1992) ("[A]n affidavit which contains hearsay upon hearsay need not be categorically rejected. Rather, 'double hearsay' must be evaluated in conjunction with the

- 13 -

other information in the affidavit to determine whether the information is reliable." (internal citations and some quotation marks omitted)).

Instantly, the suppression court, in its opinion and order denying suppression, found that the four corners of the Affidavit established probable cause to support the search warrant:

> Following a four-corners review of solely the Affidavit …, this court agrees with the Commonwealth [that the search warrant was lawfully issued]. **Although some hearsay was included in the application for the search warrant, [Detective] Havens also incorporated information that the CI personally observed two (2) firearms in [Appellant's] home**[. Although the CI and CI's relative] were not completely certain of the types of firearm[s] they saw, [] they did not wa[]ver in their assertion that [they saw] firearms [] inside [Appellant's home, leaning] against the staircase. [Detective] Havens detailed the convictions he found in [Appellant's] criminal history and confirmed that [Appellant], regardless of type or model, is prohibited from owning firearms. For the first encounter, **the CI personally saw [CI's relative] hand [Appellant] a large amount of cash and watched [Appellant] exchange the cash for something.** After [CI's relative] returned to the CI's vehicle, the CI observed the narcotics that [CI's relative] bought from [Appellant], specifically, two (2) ounces of crack cocaine and two (2) ounces of powder cocaine, and communicated this to [Detective] Havens. During the second encounter, the CI remained in their vehicle but was able to see [Appellant] hand [a different] family member something[,] and confirmed [that] once the family member showed it to the CI, that it was also crack cocaine. [**Detective**] **Havens indicated that the CI had successfully been cooperating with law enforcement since 2018, and listed the ways in which this particular CI had assisted the police.** The CI identified [Appellant] from a prior encounter and [Detective] Havens saw [Appellant outside of the residence] speaking with a known drug dealer in the area. Therefore, [Appellant's] argument fails and the four corners of the Affidavit of the search warrant establish sufficient probable cause.

Suppression Court Opinion and Order, 3/11/22, at 4-5 (emphasis added; some capitalization and punctuation modified).

We agree with the suppression court's foregoing reasoning, which is supported by the record and the law. Several facts supported probable cause to believe that Appellant was engaging in criminal activity, and that police would find contraband inside Appellant's home. The Affidavit stated that the CI personally observed (1) CI's relative engage in a hand-to-hand drug transaction with Appellant, while on the front porch to Appellant's home; and (2) firearms inside Appellant's home, while the front door was open for this transaction. Affidavit, 4/26/21, ¶ 16.

Moreover, the Affidavit established the CI's history of reliability and veracity. *Id.* ¶ 15. In this regard, we are guided by our Supreme Court's decision in **Commonwealth v. Jones**, 668 A.2d 114 (Pa. 1995) (plurality). In that case, while police were executing a search warrant at a residence, which, a confidential informant reported, was associated with drug dealing, the defendant attempted to enter the residence. *Id.* at 116. Police informed the defendant he would be subjected to a pat-down search if he entered the residence. *Id.* After the defendant entered and police searched him, they found cocaine on his person and charged him with drug offenses. *Id.* In the affidavit of probable cause for the search warrant, the affiant stated that a confidential informant, **who had proven reliable to police on multiple occasions in the past**, reported that he/she had personally observed

individuals engage in narcotics transactions inside the residence. *Id.* at 116, 117. Following his conviction of drug offenses, the defendant filed a suppression motion asserting the affidavit failed to establish probable cause, where it contained no independent police corroboration to ensure the confidential informant's reliability. *Id.* at 116.

The suppression court granted the defendant's suppression motion "because it determined that the affidavit contained no corroboration which ensured its reliability, nor did it set forth with specificity any dates when the informant observed cocaine in the residence to be searched." *Id.* (citation omitted). "On appeal, the Superior Court held that corroboration is only one factor to be considered, and that based upon the totality of the circumstances and a fair reading of the affidavit, the informant's information was not stale." *Id.* (citation omitted).

The Supreme Court affirmed, holding a confidential informant's tip supplies probable cause for an arrest when the informant states that he/she has personally observed narcotics sales, and a police officer swears under oath that the informant has proven reliable in the past. *See id.* at 117-18; *see also Clark*, 28 A.3d at 1288 ("[A]n informant's tip may constitute probable cause where," *inter alia*, "the informant has provided accurate information of criminal activity in the past"). The *Jones* Court held that "if an informant's veracity has already been established through prior reliable tips, [independent police] corroboration is not necessary." *Id.* at 117; *see also id.*

("[R]equir[ing] corroboration in every situation would be contrary to the purpose of the totality of circumstances test: allowing a flexible, common sense approach to all circumstances of an affidavit." (citations omitted)).

Here, as in **Jones**, the CI provided information based upon the CI's personal observation of criminal activity at Appellant's home. Moreover, the Affidavit detailed how the CI had proven reliable to police, on myriad prior occasions, leading to multiple arrests[4] as well as the issuance of three search warrants, whereupon police discovered contraband upon execution of the respective warrants. Affidavit, 4/26/21, ¶ 15. In line with **Jones**, we conclude that the veracity of the CI was established based on his/her numerous prior reliable tips, even absent any independent police corroboration. **See Jones**, 668 A.2d at 117-18. **Cf. Manuel**, 194 A.3d at 1084-85 (concluding that the information set forth in the affidavit of probable cause was legally insufficient to support the issuance of a search warrant pertaining to the defendant's

---

[4] In **Commonwealth v. White**, 457 A.2d 537 (Pa. Super. 1983), we stated that it is

> axiomatic that prior arrests attributed to information supplied by the informant need not result in convictions to establish the credibility of the informant, or the reliability of his information. …. The essential fact is that the informant gave prior information implicating others in criminal activity[,] which information proved to be correct.

**Id.** at 539 (internal citations omitted); **see also Commonwealth v. Manuel**, 194 A.3d 1076, 1084 (Pa. Super. 2018) (*en banc*) ("[T]here is no 'magic number' of arrests or convictions for which a CI need previously have provided information to be deemed reliable.").

residence, where (1) "the **sole** indicia of the [confidential informant's] reliability presented in the affidavit of probable cause was that he had provided information leading to a **single** [unadjudicated] drug arrest"; (2) "[p]olice neither arranged for the [confidential informant] to conduct a controlled buy at the premises nor performed any type of photographic or electronic surveillance"; and (3) there was no independent police corroboration of the tips (emphasis added)).

Nevertheless, we observe that the Affidavit did, in fact, include corroboration. Specifically, Detective Havens confirmed that (1) Appellant resided at the residence to which the CI had attributed the illegal drug/gun activity; and (2) he observed Appellant outside of the residence shortly after CI's relative's narcotics purchase from Appellant,[5] conversing with a known drug dealer. Affidavit, 4/26/21, ¶ 17. Accordingly, this corroborating information bolsters our conclusion that the CI's veracity was sufficiently demonstrated.

---

[5] Although police did not recover or positively identify narcotics in connection with this case, the totality of the circumstances established a fair probability that the CI, who had conducted numerous prior controlled purchases of narcotics, had sufficient experience to identify the substance CI's relative showed the CI as cocaine. Also, the fact that the CI, late at night, observed CI's relative hand Appellant a large quantity of cash in exchange for an item supports that the item was contraband. We reiterate that probable cause requires "only a probability, and not a *prima facie* showing, of criminal activity." **Thompson**, 985 A.2d at 931.

Based upon the information contained within the four corners of the Affidavit, we confirm the Magisterial District Judge had a "substantial basis for concluding" that police would find evidence of narcotics/gun activity in Appellant's home. **Batista**, 219 A.3d at 1202. When viewed in a common sense, non-technical fashion, the totality of the circumstances alleged in the Affidavit supports a probable cause finding for the issuance of the search warrant. Accordingly, Appellant's issue does not merit relief.

However, this does not end our review, as we *sua sponte* examine the legality of Appellant's sentence imposed for firearms prohibited. Although neither party has raised this issue on appeal, it is settled that "[q]uestions regarding the legality of a sentence are not waivable and may be raised *sua sponte* on direct review by this Court." **Commonwealth v. Verma**, 334 A.3d 941, 951 (Pa. Super. 2025) (citation and quotation marks omitted). Review of the legality of a sentence "presents a pure question of law. As such, our scope of review is plenary and our standard of review is *de novo*." **Commonwealth v. Wright**, 276 A.3d 821, 827 (Pa. Super. 2022) (internal citations and quotation marks omitted). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." **Verma**, 334 A.3d at 951 (citation omitted).

"In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed."

*Commonwealth v. Borrin*, 80 A.3d 1219, 1226 (Pa. 2013) (*Borrin II*) (citations omitted); *see also Commonwealth v. Isabell*, 467 A.2d 1287, 1293 (Pa. 1983) ("Generally, the signed sentencing order, **if legal**, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence." (citations omitted; emphasis added)).  The trial court, however, "retain[s] the inherent power to correct errors in its records or orders so they speak 'the truth,' and thereby reflect what actually took place in judicial proceedings."  *Id.* at 1227 (citations omitted).

> "Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken." *Commonwealth v. Quinlan*, 639 A.2d 1235, 1238 (Pa. Super. 1994), *appeal dismissed as improvidently granted*, 675 A.2d 711 (Pa. 1996).  *See also* 42 Pa.C.S.A. § 5505 (stating except as otherwise provided or prescribed by law, court upon notice to parties may modify or rescind any order within 30 days after its entry, notwithstanding prior termination of any term of court, if no appeal from such order has been taken or allowed).  Nevertheless, once the thirty-day period expires, the trial court usually loses the power to alter its orders.  *Quinlan, supra*.  **An exception to this general rule exists to correct "clear clerical errors."**  [*Commonwealth v.*] *Borrin*, [12 A.3d 466,] 471 [(Pa. Super. 2011) (*en banc*) (*Borrin I*)].

*Commonwealth v. Kremer*, 206 A.3d 543, 548 (Pa. Super. 2019) (emphasis added; some citations modified); *see also Borrin II*, 80 A.3d at 1227 ("The term 'clerical error' has been long used by our courts to describe an omission or a statement in the record or an order shown to be inconsistent with what in fact occurred in a case, and, thus, subject to repair." (citations omitted)).

"[F]or a trial court to exercise its inherent authority and enter an order correcting a defendant's written sentence to conform with the terms of the

sentencing hearing, the trial court's intention to impose a certain sentence must be obvious on the face of the sentencing transcript." ***Borrin I***, 12 A.3d at 473. "[O]nly when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a clear clerical error on the face of the record, and the sentencing order subject to later correction." ***Id.*** (citation and internal quotation marks omitted).

Instantly, the written sentencing order for Appellant's firearms prohibited conviction contains a "clear clerical error" regarding the maximum term of imprisonment imposed. ***Id.*** At the sentencing hearing, the trial court announced, "**Correct it if I misspoke**, but [Appellant's sentence] was 60 to **120**" months in prison. N.T., 6/27/23, at 5 (emphasis added); ***see also id.*** at 4 (trial court initially stating the sentence was 60 to **72** months' imprisonment).[6] However, the written sentencing order, filed that same date, stated the court imposed 60 to **72** months' imprisonment. Sentencing Order, 6/27/23, at 1. ***But see also*** Memorandum of Order, 6/27/23 (trial court stating that it imposed a sentence of "60 – 120 months").

_____

[6] Section 9756 of the Sentencing Code provides that in imposing total confinement, the trial court shall specify a maximum period, as well as a minimum sentence that does not exceed one-half of the maximum. 42 Pa.C.S.A. § 9756(a), (b)(1). Instantly, a sentence of 60 to 72 months' imprisonment is clearly illegal because the minimum sentence is more than one-half the maximum sentence, in violation of Section 9756(b)(1). ***Commonwealth v. Jacobs***, 900 A.2d 368, 373 (Pa. Super. 2006) (*en banc*) (stating that "[f]ailure to ensure that the minimum sentence is not greater than half the maximum, in violation of 42 Pa.C.S.A. § 9756(b)[,]" constitutes an illegal sentence (some citations omitted)).

In light of the foregoing, we conclude that the trial court's intention to impose a prison sentence of 60 to 120 months for firearms prohibited was "clearly and unambiguously declared during the sentencing hearing[.]" ***Borrin I***, 12 A.3d at 473. Accordingly, we vacate Appellant's judgment of sentence and remand for the limited purpose of correcting the clear clerical error in the written sentencing order. ***See id.*** at 471-73. In all other respects, we affirm Appellant's convictions.

Judgment of sentence affirmed in part and vacated in part. Case remanded for correction of Appellant's sentencing order. Superior Court jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/04/2025