2025 PA Super 282

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN LEWIS KRAMER | : | |
| | : | |
| Appellant | : | No. 306 MDA 2025 |

Appeal from the Judgment of Sentence Entered August 5, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001360-2020

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                              **FILED: DECEMBER 18, 2025**

Appellant John Lewis Kramer appeals from the judgment of sentence entered by the Court of Common Pleas of Lackawanna County after a jury convicted Appellant of Rape of a Child, Involuntary Deviate Sexual Intercourse (complainant less than 16 years of age) ("IDSI"), Statutory Sexual Assault, Unlawful Contact with a Minor, Aggravated Indecent Assault of a Child, Incest, and Endangering the Welfare of a Child ("EWOC").[1]  We vacate the judgment of sentence in part and remand with instructions.

Appellant was charged with the aforementioned offenses in connection with allegations that he had repeatedly sexually assaulted his biological daughter, E.K., for an extended period of time.  Appellant proceeded to a jury

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 3121(c), 3123(a)(7), 3122.1(b), 6318(a)(1), 3125(b), 4302(b)(2), and 4304(a)(1), respectively.

trial which was held on February 14-17, 2022, at which the following factual background was developed.

E.K. testified that her father, Appellant, had sexually assaulted her starting when she was twelve years old until Appellant was arrested, at which time E.K. was fifteen years old. Notes of Testimony (N.T.), 2/14/22, at 43, 52.[2,3] E.K. described the assaults in detail, specifying that her father required her to engage in oral, vaginal, and anal sex. *Id.* at 50-51. E.K. indicated that the sexual assaults would occur at their family home in Scranton or at Lutheran Academy, a school associated with a church where Appellant was involved in cleaning. *Id.* at 52-54. As Appellant was scheduled to clean at Lutheran Academy on Fridays, he would take E.K. with him there and sexually assault her in the basement. *Id.* at 56.

E.K. recalled instances in which her father would tie her up and blindfold her during the sexual assaults. *Id.* at 50-51. E.K. suspected that Appellant would take pictures during the assaults as she could see flashes through her blindfold. *Id.* at 70. After Appellant took a video of her engaged in a sex act,

_____

[2] The certified record contains two transcripts of the jury trial proceedings held on February 14, 2022. The first transcript filed on April 13, 2022 is incomplete. We cite to the second transcript filed on May 10, 2023, which appears to be the complete record of the February 14, 2022 trial proceeding.

[3] At trial, E.K. was asked to identify Appellant in the courtroom but was unable to do so. N.T., 2/14/22, at 42. We note that Appellant's wife testified at trial that Appellant was "quite a bit thinner" since his arrest in March 2020. *Id.* at 106. Detective Christian Gowerty testified at trial that Appellant's physical appearance had changed dramatically since his arrest, noting that Appellant had lost "a large amount of weight" and was wearing eyeglasses and a mask. N.T., 2/15/22 (p.m.), at 15.

she asked Appellant to delete the video. *Id.* E.K. testified that Appellant provided condoms and cream to avoid impregnating her; E.K. indicated that Appellant would keep these contraceptives in a lockbox. *Id.* at 59-64. Further, E.K. shared that Appellant made her sign two "sex contracts," which attempted to require her to have extra vaginal, oral, or anal sex with him if she violated the contractual terms which included the prohibition of telling anyone about the assaults. *Id.* at 64-73.

E.K. testified that she did not tell anyone about the abuse as she was afraid that Appellant would hurt her. *Id.* at 49. She was also afraid that the revelation of the abuse would destroy her family and cause her family members to "hate" her. *Id.* at 70. E.K. only disclosed assaults when her mother confronted E.K. with pictures that she had found on Appellant's phone that depicted E.K. naked and tied up. *Id.* at 47-48.

Terry Kramer, Appellant's wife and E.K.'s mother, testified that she was reviewing Appellant's email account in March 2020 on the family computer when she found a contract listing sexual acts that Appellant was requiring of a certain individual and consequences if those acts were not done. *Id.* at 110-12. Mrs. Kramer indicated that the contract did not refer to her and was signed with an "E." *Id.* at 112-13. Mrs. Kramer's suspicions caused her to investigate Appellant's phone (a Samsung Galaxy S10e) after which she discovered that Appellant's Google Photos contained a picture of E.K. engaged in a sexual act with Appellant while both were naked. *Id.* at 114-18. She

immediately went and showed the picture to E.K., who became visibly upset and started to cry. *Id.* at 118.

Mrs. Kramer called the police to report that she had evidence that her husband, Appellant, was raping her daughter. *Id.* at 118-21. Officers directed her to leave her home for her safety and meet at a nearby Turkey Hill.[4] *Id.* Mrs. Kramer had sent the photos from Appellant's phone to her personal email to preserve them and gave Appellant's phone to the officers. *Id.* at 121; N.T., 2/15/22 (a.m.), at 18. At the direction of the responding officers, Mrs. Kramer picked up her other children and then took E.K. to the Children's Advocacy Center where E.K. underwent a forensic interview. N.T., 2/14/22, at 122. E.K. also submitted to a rape kit medical examination.

Mrs. Kramer sent the photos to detectives that evening. *Id.* In addition, Mrs. Kramer provided police with Appellant's lockbox because E.K. indicated that Appellant kept contraceptives in there. *Id.* at 125. Mrs. Kramer indicated she and Appellant did not use contraception when having sexual intercourse.[5] A subsequent search of the lockbox revealed that it contained condoms,

---

[4] Officer Nick Philbin of the Scranton Police Department indicated that at the time of the initial report of Appellant's abuse in March 2020, citizens were not permitted to go into the police station to make a report given that it was the height of the COVID-19 pandemic and corresponding lockdown. N.T., 2/15/22 (a.m.), at 15.

[5] Mrs. Kramer also testified that after Appellant had been taken into custody, Appellant sent her a sealed letter through his mother, which indicated that Mrs. Kramer "crossed a line, and it is going to cost you in the end one way or another and nothing will stop it." N.T., 2/14/22, at 133. Appellant threatened that if he was convicted of the relevant charges, he would seek to have Mrs. Kramer indicted for 11 unnamed crimes and petition to have his children removed from her care and placed in the foster system. *Id.*

spermicide, and a second "sex contract" similar to the one that Mrs. Kramer found in Appellant's email. N.T., 2/15/22 (a.m.), at 54-59.

Appellant submitted to an interview with detectives during which he admitted that he had vaginal, anal, and oral sex with E.K. both at his home and at the Lutheran Academy. N.T., 2/15/22 (p.m.), at 10-16. Appellant also admitted to blindfolding his daughter during the acts and taking photos and videos of such acts, but indicated that he deleted the videos. *Id.* at 15-16.

Appellant's cell phone was provided to the FBI to conduct a forensic examination. FBI Agent Eric Bailey testified that the search revealed multiple videos of E.K. performing oral sex on an adult male whose face was not shown. N.T. 2/15/22 (a.m.), at 87-90. Agent Bailey indicated that after he discovered the videos, he went to the Lutheran Academy and was able to conclusively identify the location of the assault taking place in the videos as being at the Lutheran Academy. *Id.* at 91-93. The prosecution admitted for the jury's review an excerpt of the video and photographs Agent Bailey took at the Lutheran Academy for comparison. *Id.*

At the conclusion of the trial, the jury convicted Appellant on all charges. At Appellant's sentencing hearing held on August 5, 2022,[6] Appellant stipulated to his status as a Sexually Violent Predator (SVP) and his requirement to submit to lifetime registration under the Sexual Offender

---

[6] The cover sheet of the sentencing transcript lists the sentencing hearing date as September 5, 2022. However, the sentencing order and dockets show that Appellant was sentenced on August 5, 2022.

Registration and Notification Act (SORNA); Appellant submitted to a colloquy in which he waived his right to have an SVP hearing. N.T., 8/5/22, at 2-6. The trial court expressed its intention to impose the following sentences on the record at the sentencing hearing:

Count 1 (Rape): 10–20 years' imprisonment

Count 2 (Statutory Sexual Assault): 3-10 years' imprisonment

Count 3 (IDSI): 10-20 years' imprisonment

Count 4 (Unlawful Contact with a Minor): 6-12 years' imprisonment

Count 5 (Aggravated Indecent Assault): 3-10 years' imprisonment

Count 6 (Incest): 3-10 years' imprisonment

Count 7 (EWOC): 1-2 years' imprisonment

*Id.* at 32-36.[7] The trial court indicated that Counts 1, 3, 4, 5, and 7 would run consecutively and Counts 2 and 6 would run concurrently. *Id.* The trial court also stated that Appellant would be subject to three years' mandatory probation. *Id.* At sentencing, the trial court incorrectly calculated Appellant's aggregate sentence to be 30-60 years' imprisonment.[8] *Id.*

On the same day, the trial court entered a sentencing order which listed Appellant's sentences as follows:

---

[7] At the sentencing hearing, the trial court incorrectly identified the incest charge as Count 5, when it had been brought at Count 6.

[8] The trial court also provided that Appellant's sentence in this case would run consecutively to the term of imprisonment imposed in his federal prosecution. N.T., 8/5/22, at 39. In 2022, Appellant was sentenced to 360 months' imprisonment in federal court for his convictions for production of child pornography and attempted witness tampering.

Count 1 (Rape): 10–20 years' imprisonment

Count 2 (Statutory Sexual Assault): 3-10 years' imprisonment

Count 3 (IDSI): 10-20 years' imprisonment

Count 4 (Unlawful Contact with a Minor): 6-12 years' imprisonment

Count 5 (Aggravated Indecent Assault): 3-10 *months'* imprisonment,

Count 6 (Incest): 3-10 *months'* imprisonment

Count 7 (EWOC): 1-2 years' imprisonment.

Sentencing Order, 8/5/22, at 1 (emphasis added). The sentencing order states that only Counts 1, 3, 4, and 7 would run consecutively and Counts 2, 5, and 6 would run concurrently. *Id.* at 2. The order sets Appellant's aggregate sentence at 27-54 years' imprisonment to be followed by three years' mandatory probation. *Id.*

On August 22, 2022, Appellant filed an untimely post-sentence motion. On October 4, 2022, the trial court entered an order purporting to deny the post-sentence motion. Appellant did not file a direct appeal.

On August 23, 2023, Appellant filed a PCRA petition, arguing *inter alia* that his trial counsel was ineffective in failing to file a direct appeal. On April 11, 2024, the trial court entered an order granting the petition in part by reinstating Appellant's right to file a direct appeal *nunc pro tunc*.

Appellant filed an appeal (docketed at 666 MDA 2024) that was ultimately dismissed by this Court on July 22, 2024 due to Appellant's failure to comply with Pa.R.A.P. 3517. On January 23, 2025, Appellant filed another PCRA petition again seeking to reinstate his direct appeal rights. On February

18, 2025, the PCRA court again reinstated Appellant's direct appeal rights *nunc pro tunc*. This appeal followed.

During the pendency of this appeal, after Appellant had filed his appellate brief, on June 24, 2025, the trial court entered a "corrected" sentencing order in which it made several changes to its original sentencing order that was entered on August 5, 2022. The corrected sentencing order reflected the sentences announced by the trial court in open court at Appellant's sentencing hearing and also increased the mandatory consecutive probation term from three years to fifteen years. Thereafter, on June 26, 2025, Appellant filed in this Court an "Application for Remand and Stay," claiming the trial court had no jurisdiction to amend its sentencing order nearly three years after the entry of its original judgment of sentence.

Before we reach the merits of the claims raised in Appellant's appellate brief, we will first address Appellant's contention that the trial court had no jurisdiction to enter the corrected sentencing order.

> Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken." **Commonwealth v. Quinlan**, 433 Pa.Super. 111, 639 A.2d 1235, 1238 (1994), *appeal dismissed as improvidently granted*, 544 Pa. 183, 675 A.2d 711 (1996). **See also** 42 Pa.C.S.A. § 5505 (stating except as otherwise provided or prescribed by law, court upon notice to parties may modify or rescind any order within 30 days after its entry, notwithstanding prior termination of any term of court, if no appeal from such order has been taken or allowed). Nevertheless, once the thirty-day period expires, the trial court usually loses the power to alter its orders. **Quinlan, supra**. An exception to this general rule exists to correct "clear clerical errors." [**Commonwealth v. Borrin**, 12 A.3d 466, 471 (Pa.Super. 2011) (*en banc*).] "This exception to the general rule

- 8 -

of Section 5505 cannot expand to swallow the rule." ***Commonwealth v. Holmes***, 593 Pa. 601, 617, 933 A.2d 57, 66 (2007). Thus, the court's inherent authority to correct patent errors is a "limited judicial power." ***Id.*** at 618, 933 A.2d at 67."[A]n alleged error must qualify as a clear clerical error (or a patent and obvious mistake) in order to be amenable to correction." ***Borrin, supra*** at 473.

> This Court's case law has addressed the situations where...the terms of a defendant's sentence as stated at the sentencing hearing conflict (or are deemed incompatible) with the terms of the defendant's sentence as stated in the sentencing order.
>
> In these circumstances, for a trial court to exercise its inherent authority and enter an order correcting a defendant's written sentence to conform with the terms of the sentencing hearing, the trial court's intention to impose a certain sentence must be obvious on the face of the sentencing transcript. ... Stated differently, only when a trial court's intentions are clearly and unambiguously declared during the sentencing hearing can there be a "clear clerical error" on the face of the record, and the [signed] sentencing order subject to later correction.
>
> If, on the other hand, a trial court's stated intentions during the sentencing hearing are ambiguous, then the terms of the sentence in the [signed] sentencing order control, and the trial court cannot correct its perceived mistake. ***See Commonwealth v. Isabell***, 503 Pa. 2, [12,] 467 A.2d 1287, 129[2] (1983) ([stating:] "Generally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence"); .... This is because the alleged error in the sentencing transcript is not a "clear clerical error," but rather, is an ambiguity that must be resolved by reference to the written sentencing order.

***Id.*** (some internal citations omitted).

***Commonwealth v. Kremer***, 206 A.3d 543, 548 (Pa.Super. 2019). To summarize, the jurisdictional time limits set forth in Section 5505 do not "impinge on the time-honored inherent power of courts" to correct patent and

and obvious errors *even in the absence of traditional jurisdiction*. **Holmes**, 593 Pa. at 615, 933 A.2d at 65.

Further, Section 5505 does not limit a trial court from "*sua sponte* correct[ing] an illegal sentence, even after the defendant has begun serving the original sentence." **Commonwealth v. Baio**, 898 A.2d 1095, 1099 (Pa.Super. 2006) (citing **Commonwealth v. Santone**, 757 A.2d 963 (Pa.Super. 2000); **Commonwealth v. Quinlan**, 639 A.2d 1235, 1239 (Pa.Super. 1994) (recognizing respective challenges of an illegal, patently contradictory, or fraudulently procured sentence as excepted from the jurisdictional time limit imposed by Section 5505)).

In this case, the trial court's corrected sentencing order changes portions of the original sentencing order that were incompatible with the sentence that the trial court imposed in open court. The trial court clearly stated at the sentencing hearing that 1) the sentence on Count 4 – Unlawful Contact with a Minor was for 6-12 years' imprisonment, not 6-12 months' imprisonment, 2) the sentence on Count 5 – Aggravated Indecent Assault of a Child was for 3-10 years' imprisonment, not 3-10 months' imprisonment, and 3) the sentence on Count 5 – Aggravated Indecent Assault was to run consecutively with Counts 1, 3, 4 and 7, not concurrently. N.T., 8/5/22, at 32-36. As the trial court's stated intentions at the sentencing hearing were clearly and unambiguously declared, the trial court was permitted to resolve these clerical errors in its corrected order to reflect the sentence it entered in open court.

The trial court's corrected order also attempted to recalculate Appellant's aggregate sentence based on the corrected individual sentences. This modification would also qualify as a clear clerical error that would be subject to later correction. However, while the corrected order lists Appellant's aggregate sentence of imprisonment as 30-60 years' imprisonment, his aggregate sentence is actually 30-64 years' imprisonment.[9] Upon remand, the trial court is directed to enter a corrected sentencing order to accurately reflect Appellant's aggregate sentence of imprisonment.

Appellant also challenges the fact that the trial court's corrected order indicates that Appellant's aggregate term of incarceration is to be followed by fifteen years' probation instead of only three years' probation. The trial court did not set forth reasoning as to why it increased the probationary tail of the sentence.

Sections 9718.5 and 9799.14(d) of the Sentencing Code require a trial court to impose a mandatory term of probation for certain sexual offenses. Section 9718.5(a) provides:

> **§ 9718.5 Mandatory period of probation for certain sexual offenders**
>
> **(a) Mandatory probation supervision after release from confinement.** -- A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating

---

[9] As noted above, Appellant received the following individual consecutive sentences of imprisonment: Count 1 (Rape): 10–20 years' imprisonment, Count 3 (IDSI): 10-20 years' imprisonment, Count 4 (Unlawful Contact with a Minor): 6-12 years' imprisonment, Count 5 (Aggravated Indecent Assault): 3-10 years' imprisonment, and Count 7 (EWOC): 1-2 years' imprisonment.

to sexual offenses and tier system) **shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court**.

42 Pa.C.S.A. § 9718.5(a) (emphasis added).  Section 9718.5(c) also clarifies that a trial court has "no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than provided for under subsection (a).  Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section."  42 Pa.C.S.A. § 9718.5(c).

Section 9718.5 limits the three-year mandatory probation period to only apply to those convicted of one of the offenses enumerated in subsection 9799.14(d), which are deemed to be Tier III sexual offenses.  *See* 42 Pa.C.S.A. § 9799.14(d).  Pursuant to Section 9799.14(d), five of Appellant's convictions qualify as Tier III offenses: Rape, Statutory Sexual Assault, IDSI, Aggravated Indecent Assault, and Incest.  *See* 42 Pa.C.S.A. § 9799.14(d)(2), (3), (4), (7), and (9).

From our review of the record, it appears that the trial court included a three-year probationary tail in the original judgment of sentence based on a belief that Appellant, who had multiple Tier III convictions, was only subject to a single three-year term of probation pursuant to Section 9718.5.  The trial court subsequently attempted to amend its original sentencing order to replace the single three-year term of probation with five consecutive three-year probation periods (fifteen years' consecutive probation) given that Appellant has five Tier III offense convictions.

However, we cannot find that the trial court's original imposition of a single three-year term of probation for an offender with multiple Tier III convictions constituted a patent and obvious error. Section 9718.5 does not expressly require that a defendant with multiple Tier III convictions receive separate, consecutive periods of probation after release from confinement. We are not aware of any case law that has interpreted Section 9718.5 to require consecutive periods of probation for offenders with multiple Tier III convictions. Although we agree with the trial court's assessment that a fifteen-year term of probation was warranted pursuant to Section 9718.5, we cannot find the trial court had the inherent authority to make this change to its original sentencing order more than thirty days after its entry.

Accordingly, while the trial court properly exercised its inherent authority to issue a corrected sentencing order to reflect the correct individual and aggregate sentences of incarceration, the trial court had no jurisdiction to increase the probationary tail of Appellant's sentence more than thirty days after the entry of sentence, absent a patent and obvious error in the probationary term. As a result, we vacate the judgment of sentence in part and direct the trial court to correct its sentence to accurately reflect the correct aggregate term of imprisonment and impose the original three-year term of probation after release from confinement.[10]

_____

[10] In his "Application to Remand and Stay" filed on June 26, 2025, Appellant claims he is entitled to a remand for the trial court to conduct a hearing on
*(Footnote Continued Next Page)*

Appellant has set forth the following issues for review on appeal:

I.   Whether the trial court abused its discretion in denying [Appellant's] request for a new trial based on the weight of the evidence being so contrary to the verdict that it would shock one's sense of justice?

II.  Whether the sentence imposed by the trial court is contrary to the fundamental norms of the sentencing process and sentencing guidelines, and unreasonable when it sentenced [Appellant] to 10 to 20 years for Involuntary Deviate Sexual Intercourse of Person less than 16 which sentence was 4½ years above the standard range and 3½ years above the aggravated range sentence?

III. Whether the trial court failed to consider applicable mitigating factors as well as Appellant's character, age, lack of criminal history, and rehabilitative needs at the time of sentencing, which resulted in the imposition of a manifestly excessive and unduly harsh aggregate sentence being imposed?

IV.  Whether the court abused its discretion and/or erred, as a matter of law, when it precluded Appellant's counsel from impeaching the credibility of the Commonwealth's witness with prior inconsistent testimony?

Appellant's Brief, at 5 (renumbered for review).

Appellant challenges the weight of the evidence supporting his convictions in this case. However, to raise such a claim on appeal, "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing."

_____

post-sentence motions that he filed after the trial court entered its corrected sentencing order on June 24, 2025 *sua sponte*. Given our conclusions that the trial court had inherent authority to correct certain patent errors in its sentencing order *sua sponte* and our decision to grant Appellant relief by vacating the trial court's increased probationary tail, we deny the Application to Remand and Stay.

- 14 -

*Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa.Super. 2020) (citing Pa.R.Crim.P. 607) (other citation omitted). "An untimely post-sentence motion does not preserve issues for appeal." *Commonwealth v. Wrecks*, 931 A.2d 717, 719-720 (Pa.Super. 2007). Further, this Court has held that a defendant's failure to properly preserve a weight of the evidence claim in the trial court will result in waiver, even if the trial court addresses the claim on appeal. *Rivera*, 238 A.3d at 497 (citing *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 494 (2009)).

In this case, while Appellant was sentenced on August 5, 2022, Appellant did not file a post-sentence motion until August 22, 2022. Thus, Appellant's post-sentence motion was untimely. *See* Pa.R.Crim.P. 720 ("a written post-sentence motion shall be filed no later than 10 days after imposition of sentence").

Nevertheless, Appellant asserts that his post-sentence motion was timely filed on August 22, 2022 as he asserts a certified copy of the corrected sentencing order was placed on the docket on August 22, 2022 which reported his aggregate sentence. Appellant's Brief at 7-8. However, this Court has held that:

> for purposes of Pa.R.Crim.P. 720(A)(1), regardless of the date the sentence was entered on the docket, a written post-sentence motion must be filed no later than 10 days after the date of imposition of sentence. If for some reason, the sentence was not entered on the docket the day the sentence was imposed, a defendant who wishes to file a post-sentence motion must still do so no later than 10 days after the date of imposition of sentence. This interpretation comports with the plain language of Pa.R.Crim.P. 720(A)(1).

*Commonwealth v. Green*, 862 A.2d 613, 617 (Pa.Super. 2004) (*en banc*). In other words, "the beginning of the ten-day [deadline for the filing of post-sentence motion] refers to the date of imposition of sentence and not necessarily the date the sentence was entered on the docket." *Id.* at 616. "The date of imposition of sentence is the date the trial court pronounces the sentence. It is implausible to argue that the date on which the trial court pronounces the sentence is not the date on which sentence is imposed." *Id.* at 619.

As the judgment of sentence was imposed on August 5, 2022, Appellant's post-sentence motion was to be filed no later than August 15, 2022. Appellant's untimely post-sentence motion filed on August 22, 2022 did not preserve his challenge to the weight of the evidence for appeal. As such, we conclude that this issue is waived.

Appellant also raises various challenges to the trial court's sentencing discretion in arguing that the trial court (1) imposed an unreasonable individual sentence for IDSI that exceeded the aggravated range of the sentencing guidelines and (2) failed to consider applicable mitigating factors and Appellant's rehabilitative needs.

These arguments which relate to the discretionary aspects of sentence were required to be raised before in the trial court at sentencing or in a timely filed post-sentence motion. "[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such

efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Conte***, 198 A.3d 1169, 1173 (Pa.Super. 2018) (citation omitted); Pa.R.A.P. 302(a). Further, as noted above, "[a]n untimely post-sentence motion does not preserve issues for appeal." ***Wrecks***, 931 A.2d at 719-720.

As Appellant failed to raise his challenges to the discretionary aspects of his sentence at sentencing or in a timely post-sentence motion, he has waived these claims on appeal. We decline to review these issues further.

Lastly, Appellant asserts that the trial court abused its discretion in precluding defense counsel from impeaching the credibility of FBI Agent Bailey with an alleged instance of prior inconsistent testimony at Appellant's prosecution on federal charges.

In reviewing Appellant's challenge to the trial court's evidentiary ruling, we are guided by an abuse of discretion standard of review.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Reed***, 292 A.3d 601, 605 (Pa.Super. 2023) (quoting ***Commonwealth v. Talley***, 236 A.3d 42, 55 (Pa.Super. 2020)). Further, "[a]

trial court has discretion to determine both the scope and permissible limits of cross-examination[; t]he trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." ***Commonwealth v. Briggs***, 608 Pa. 430, 501-502, 12 A.3d 291, 335 (internal citation omitted)).

During a third round of re-cross examination of Agent Bailey, defense counsel asked Agent Bailey if he had testified at Appellant's federal trial that he was unable to determine the make and model of the cell phone that took five particular photographs referred to by the prosecution. N.T., 2/15/22, at 126-33. The Commonwealth objected to line of questioning, arguing that it was beyond the scope of the re-direct examination and that this question could have been raised previously on cross examination. ***Id.*** The trial court sustained the objection. ***Id.*** at 133.

This argument involves the five photos that Mrs. Kramer sent to police through email after making her initial report. As noted above, Mrs. Kramer testified that after discovering the concerning photos of sexual assault on Appellant's phone stored in Google Photos, she had emailed the photos to her personal email from Appellant's phone to preserve them as evidence. Mrs. Kramer then gave Appellant's phone to police when she reported the abuse. For reasons not explained, the photos were not able to be extracted from Appellant's phone.

Appellant asserts on appeal that the trial court abused its discretion in refusing to permit defense counsel on the third re-cross examination to ask

- 18 -

Agent Bailey whether he testified at Appellant's federal trial that the forensic extraction did not include information as to the make and model of the phone that took the five images in question. Appellant argues that he was not the individual who took the five images in question which did not show the face of the male perpetrator. Instead, Appellant alleges that his wife submitted these photos to police as she believed Appellant was cheating on her.

Regardless of whether Appellant's proposed line of questioning on his third re-cross examination was proper, we find that Appellant has utterly failed to show how this evidentiary decision caused him prejudice given the overwhelming evidence of his guilt. The Commonwealth did not seek to admit into evidence the five photographs in question, but were able to present other extensive evidence that corroborated E.K.'s testimony that she had been assaulted by her father. Not only did E.K. testify in detail about the devastating sexual assaults she suffered at the hands of Appellant, the prosecution presented multiple videos of E.K. being sexually assaulted at the Lutheran Academy, where Appellant would take E.K. every Friday evening. These videos were extracted from Appellant's cell phone. The prosecution also corroborated E.K.'s testimony by presenting items contained in Appellant's lockbox, including contraceptives he used and the second "sex contract" he had made E.K. sign that was similar to the first contract found in his email account. Further, Appellant gave a statement admitting that he had vaginal, oral, and anal sex with his juvenile daughter. Accordingly, Appellant has failed to show that he is entitled to any relief on this claim.

For the foregoing reasons, we vacate the judgment of sentence in part for the limited purpose of the trial court correcting the calculation of the aggregate sentence and returning Appellant's probationary tail to its original three years. In all other respects, we affirm the judgment of sentence.

Judgment of sentence vacated in part and remanded with instructions consistent with this opinion. "Application to Remand and Stay" denied. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2025